

**ArentFox Schiff LLP**
233 South Wacker Drive
Suite 7100
Chicago, IL 60606

312.258.5500 MAIN
312.258.5600 FAX

afslaw.com

**J. Michael Showalter**
Partner
312.258.5561 DIRECT
j.michael.showalter@afslaw.com

January 26, 2024

**VIA ECF ONLY**

Magistrate Judge Anne Y. Shields
United States District Court for the
Eastern District of New York
100 Federal Plaza, Courtroom 1040
Central Islip, NY 11722

Re: Initial Joint Letter from the Parties for *Town of Oyster Bay v. Northrop Grumman Systems Corporation* (2:23-cv-07146)

Dear Judge Shields:

Pursuant to the Court's Initial Conference Order (ECF No. 9), Federal Rule of Civil Procedure 26(f), and the Court's Individual Rules, Plaintiff Town of Oyster Bay (the "Town") and Defendant Northrop Grumman Systems Corporation ("Northrop Grumman"), hereby submit this Initial Joint Letter. The parties conducted Rule 26(f) conferences by telephone on January 8 and 19, 2024. In attendance at one or both of the parties' telephone conferences were Russell B. Selman, Matthew F. Prewitt, and J. Michael Showalter of ArentFox Schiff LLP on behalf of the Town; Mark A. Chertok of Sive, Paget & Riesel and Grant J. Esposito of Proskauer Rose LLP on behalf of Northrop Grumman.

**Northrop Grumman's Request for Adjournment.** On October 30, 2023, Your Honor set this case for an initial conference. Since that time, the Court has entered a schedule allowing for Northrop Grumman to file a motion to dismiss, which it has served on the Town, and for the Town to amend its complaint if it chooses to do so by February 13, 2024. The Town has already withdrawn its claim under the Clean Water Act. As of this submission, Northrop Grumman does not know if the Town's complaint will change again. As a result, Northrop Grumman requests a brief adjournment of the initial conference until three weeks after the Town's February 13 deadline to amend its complaint.[1] Discovery should not proceed before there is an operative complaint and the Town has fully disclosed its claims.

**The Town's Opposition to Adjournment.** The Town does not agree that an adjournment of the initial conference is reasonable here and respectfully requests to go forward to set a schedule for the exchange of Phase One discovery. Northrop Grumman has provided the

[1] Consistent with Your Honor's rules, Northrop Grumman is moving separately today for this adjournment. The Town refused this first reasonable request for an adjournment. There have been no other requests for an adjournment, and this request does not affect any other scheduled dates.

Town no reason why an adjournment is necessary—it has simply requested the adjournment as a courtesy without stating its reasons for seeking the adjournment. *See* Ex. __ (email request for adjournment). Nor could Northrop Grumman credibly argue that this initial conference is a burden or inconvenience—the same attorneys for the same parties already will be at the courthouse on the same day for a status hearing in another lawsuit, *Town of Oyster Bay v. Northrop Grumman Sys. Corp., et al.*, No. 05-cv-1945 (E.D.N.Y).

Further, there are compelling reasons to proceed with the initial conference now. On January 23, 2024, Northrop Grumman served on the Town a motion to dismiss the Complaint. That motion relies extensively on material outside the complaint, including a 20-page declaration from Edward J. Hannon, Manager of Environmental Health and Safety and Medical for Northrop Grumman, along with seven supporting exhibits that include correspondence with the New York State Department of Environmental Conservation ("DEC") and the United States Environmental Protection Agency ("EPA"). The declaration relies upon a few select items of correspondence that are part of Northrop Grumman's broader history with DEC and EPA that has not been provided to the Town. Through its motion and declaration, Nothrop Grumman is effectively asking the Court to decide the motion to dismiss on a curated and highly selected presentation of evidence without any opportunity for the Town to understand the full context in which the correspondence was exchanged. To respond to Northrop Grumman's motion to dismiss, the Town needs discovery into the factual issues raised by the motion, including records from its environmental consultants and communications with DEC and EPA that Northrop Grumman has thus far refused to share with the Town. The Town believes that these materials should be readily available in the files of Northrop Grumman and its engineering firms for production and will not require a full review of all materials related to the site as part of the initial phase of discovery.

**1. Name of the Case** – *Town of Oyster Bay v. Northrop Grumman Systems Corp.*, Civil Action No. 2:23-cv-07146-DLI-AYS.

**2. Basis for Federal Jurisdiction** – Plaintiff asserts that this Court has subject matter jurisdiction over the Town's federal claims pursuant 28 U.S.C. § 1331, 15 U.S.C. § 2619(a), and 42 U.S.C. §§ 6972(a)(1)(A) and (B), 9607(a), and 9613(f). Northrop Grumman asserts that the Court lacks subject matter jurisdiction because the relief the Town seeks is both moot and premature.

**3.** Northrop Grumman has been served. On January 23, 2024, Northrop Grumman served on the Town a motion to dismiss the complaint that argues, among other things, that the complaint should be dismissed because the Court lacks subject matter jurisdiction, and because the Town has failed to state a claim for relief.



**4.** The Town has until February 13, 2024 to file any amended complaint. No answer, counterclaims or cross-claims have been filed.

**5. Plaintiff's Explanation of the Facts of the Case.** This action arises out of past and present releases and threatened releases of hazardous substances at an 18-acre property in Nassau County, New York, now known as Bethpage Community Park (referred to interchangeably as the "Community Park" or "Community Park Property"). In 1962, Northrop Grumman donated the Community Park Property to the Town with the express condition that the property be used as a community park. But what Northrop Grumman really donated was a toxic waste dump—from the 1930s until the "donation" in 1962, Northrop Grumman used the Community Park Property as a dumping ground for hazardous industrial wastes and chemicals. Sixty years later, most of that contamination remains unremediated in the Community Park soil, depriving generations of Town residents of a community park, and threatening the drinking water of 2.6 million Long Island residents.

DEC has been aware of Northrop Grumman's contamination at the Community Park since at least 2002, and part or all of the Community Park has been closed to the public ever since. DEC has identified Northrop Grumman's contamination at the Community Park as one of the sources contributing to massive plumes of contamination migrating off-site and threating the sole-source aquifer providing drinking water to 2.6 million residents in the Town and throughout Nassau County.

The Town must seek relief from this Court because DEC has impeded an effective environmental response at the Community Park through repeated violations of established federal law and a failure to set any enforceable standards for the investigation and remediation of the toxic waste at the Community Park Property. Though DEC issued a Record of Decision in March 2013 ("2013 ROD") for an area including the Community Park, DEC has not enforced the 2013 ROD. In May 2014, Northrop Grumman and DEC executed a second Administrative Order on Consent (the "2014 AOC") that stipulated the performance of five workplans as outlined by the 2013 ROD. But the 2014 AOC is non-binding and unenforceable against Northrop Grumman. The 2014 AOC does not impose any specific schedule or time limits for Northrop Grumman to initiate or complete work. It sets no penalties or other enforcement mechanisms should Northrop Grumman fail to comply. Indeed, compliance with the 2014 AOC is optional, as it provides Northrop Grumman the right to opt out of specific requirements without impacting the remainder of the order. Unsurprisingly, given the absence enforcement mechanisms in the 2014 AOC, Northrop Grumman has not met any of the very limited deadlines included in the 2014 AOC—it has submitted some plans and reports years after they were due to DEC, while others it still has not submitted a decade later.



Not only has DEC failed to enforce a cleanup of the toxic waste at the Community Park, it has violated state and federal law.  Under federal law, cleanup standards for polychlorinated biphenyls ("PCBs") are under the control of EPA alone, and the State must seek and obtain EPA approval of a PCB cleanup standard.  But DEC set PCB cleanup standards in the 2013 ROD without any input from EPA or the Town.  Even worse, the 2013 ROD provides for excavated soil containing PCBs to be used as backfill of excavated areas below a depth of ten feet, creating a toxic landfill at the Community Park in a densely populated area where there is a well-documented contaminant pathway to the aquifer providing drinking water to Long Island residents.

This Court will not be intruding on DEC's or EPA's authority because both lack enforcement powers; DEC has abdicated its authority over Northrop Grumman and the EPA does not have authority to enter orders under the federal statute regulating PCBs.  Indeed, the TSCA and RCRA citizen suit procedures contemplate this exact issue, and provide for a notice letter procedure before filing suit to afford regulators the opportunity to address the issue themselves before the Court steps in.  DEC has not taken that opportunity; it has allowed Northrop Grumman to delay cleanup for decades without effective oversight and has not stepped up enforcement in any way since receiving the Town's notice letter.  This suit is the only path for the Town, the government entity with the most direct interest in cleaning up the Community Park Property, to enforce compliance with federal environmental laws and ensure the cleanup of the Community Park.

**6.     Defendant's Explanation of the Facts of the Case.**  Northrop Grumman has been working for years with DEC and EPA, and other agencies to investigate and remediate environmental issues in a limited area of the Park arising in part from legacy military operations for the United States Navy during and after WWII.

As part of its comprehensive response to these environmental conditions, Northrop Grumman has entered multiple consent orders/consent decrees with DEC under the state Superfund program, has fully implemented or is implementing its obligations under those agreements, and continues to address soil and groundwater contamination from legacy military-production operations. Among other steps, Northrop Grumman has installed hundreds of borings and collected thousands of soil samples in and downgradient of the Park, constructed and continues to operate groundwater extraction and treatment systems to intercept and treat groundwater migrating from the Park, and deployed soil vapor extraction and treatment systems along the downgradient borders of the Park. (These systems also address Freon that leaked from Town-operated ice rinks). The Company also regularly monitors a network of on-site and off-site groundwater wells that it and the Navy installed and reports to DEC on any changing groundwater conditions. And it has installed and operates an extraction and treatment system to address groundwater south of the Park.



In the past few years alone, Northrop Grumman has completed significant remediation for the principal area of volatile organic compounds ("VOCs") in Park soil and groundwater and is continuing with such remediation. The Company has also been meeting for more than a year with EPA with regard to the further investigation and remediation of PCBs. It is undisputed that NG will conduct PCB remediation only after EPA sign-off.

Nonetheless, the Town served a citizen suit notice in December 2022, and then filed the Complaint in this action in September 2023. The Town alleges that DEC's and EPA's oversight and authority are not sufficient and asks this Court to assume the role as regulator and effectively give the Town authority over New York State's DEC and federal EPA. This it cannot do. Further, the relief the Town seeks—an injunction preventing remediation of PCBs without EPA approval—is moot. That is because the parties agree that EPA approval is needed (including for any remediation such as that referenced by the Town above that allows for excavated soil with limited concentrations of PCBs to be reused as backfill below ten feet of depth). NG is in the process of seeking that approval, and until EPA decides what the remedy should be, there is no case or controversy for this Court to decide. The Town seeks similar relief with regard to the cleanup of VOCs under DEC auspices; it seeks to have the Court order NG to do what it is already doing: work with DEC to investigate and remediate. As a result, the Town's claims are both moot (there is no point ordering steps that are already occurring) and premature (until EPA acts, there can be no claim for failure to comply with an EPA action).

In addition, while the Town criticizes DEC, the time to challenge DEC decisions has long since expired. DEC approved a remedial plan for the Park in 2013 and modified it in 2016. The four-month statute of limitations applicable to challenges to DEC decisions has run, and the Town cannot collaterally challenge DEC action through this citizen suit.

**7.     Discovery Schedule.**  The parties have conferred regarding a schedule for discovery and present the positions below regarding how discovery should proceed.

**The Town's Position.**  The Town wishes to proceed with formal discovery now and requests that the parties will make productions of Tier One discovery on or before March 15, 2024, including at least the following categories of readily available documents:

   a. The parties' environmental consultants' files relating to environmental contamination at the Community Park Property, including relating to the investigation or remediation of such contamination.

   b. Communications with DEC or EPA relating to environmental contamination at the Community Park Property, including relating to the investigation or remediation of such contamination.



The Town further proposes that the parties exchange discovery requests relating to the issues raised in Northrop Grumman's motion to dismiss on or before February 15, 2024, and provide any responses and corresponding document production on or before March 15, 2024.  As discussed above, Northrop Grumman's motion to dismiss raises extensive disputed issues of fact outside the complaint, for which the Town will need discovery to respond.  In particular, Northrop Grumman argues that the Town's claims should be dismissed because Northrop Grumman is already working with DEC and EPA on remediating PCBs and VOCs at the Community Park.  In support of its arguments, Northrop Grumman submitted a 20-page declaration and supporting exhibits putting at issue the scope and legality of its limited investigation and remediation efforts to date, DEC's purported supervision of that work, and Northrop Grumman's engagement with EPA regarding PCB remediation.

The Town requires discovery to address the issues raised in Northrop Grumman's motion to dismiss, particularly into (i) Northrop Grumman's environmental consultants' analysis and records of the Community Park Property, and (ii) Northrop Grumman's engagement with DEC and EPA that Northrop Grumman has thus far shielded from the Town's view.  These documents and communications are fundamental to the issues in this case and to the parties' arguments on any motion to dismiss.  And the scope of that discovery will not materially change based on any Amended Complaint or any motion to dismiss that Northrop Grumman may file against that Amended Complaint.  Indeed, the Town already represented to Northrop Grumman that the Town would be dropping its Clean Water Act claim and Northrop Grumman accordingly did not address that claim in its motion to dismiss.  The Town does not anticipate dropping any of the other causes of action in an Amended Complaint.

Courts routinely permit parties to take discovery on issues relevant to pending dispositive motions.  *See, e.g.*, *Republic of Turkey v. Christie's, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018) (denying motion to stay "limited" discovery into counterclaims plaintiff had moved to dismiss); *Kanowitz v. Broadridge Fin. Solutions, Inc.*, No. 13–civ–649, 2014 WL 1338370, at *11–12 (E.D.N.Y. Mar.31, 2014) (denying in part motion to stay discovery pending disposition of an anticipated motion to dismiss to permit "discovery to bring closure to the jurisdictional issues presented").  Indeed, Northrop Grumman should be familiar with this—in *Bethpage Water Dist. v. Northrop Grumman Corp.*, No. 13-CV-6362 SJF WDW, 2014 WL 6883529, at *4 (E.D.N.Y. Dec. 3, 2014), the court granted a motion to stay discovery only in part and permitted discovery to proceed on the statute of limitations issues raised by Northrop Grumman's motion.

Here, the disputed issues of fact raised by Northrop Grumman's motion to dismiss go to the heart of the Town's complaint that DEC has utterly failed to enforce investigation and remediation of the Community Park Property.  Discovery into DEC's purported enforcement efforts and Northrop Grumman's engagement with DEC and EPA regarding the toxic waste at the Community Park Property is essential to allow the Town and the Court to address Northrop



Grumman's arguments for dismissal. Those issues are the appropriate subject of Phase One discovery and the parties need not wait for an Amended Complaint or second motion to dismiss to set a plan to exchange that discovery.

Last, it bears emphasizing that the Town is seeking information regarding Northrop Grumman's remediation of toxic waste Northrop Grumman dumped on *the Town's own property* before making a "gift" of that property to the Town. This is information Northrop Grumman should already be sharing with the Town as the property owner. EPA has been urging Northrop Grumman to share this type of information with the Town, to no avail. Northrop Grumman should not be permitted to file a motion to dismiss arguing it is already adequately investigating and remediating the Community Park Property while shielding information about those purported efforts from discovery.

**Northrop Grumman's Position.** Northrop Grumman's view is that the initial conference should be adjourned until three weeks after it knows the complaint to which it is responding. During that brief adjournment, Northrop Grumman is willing to try to reach agreement with the Town on Tier One Discovery. The scope of what the Town seeks above is unclear and likely exceeds what Your Honor's rules contemplate for Tier One Discovery. Northrop Grumman notes that it has been conducting remedial activities at the Park for decades, which are publicly available. The Town cannot credibly maintain that Tier One Discovery include every document generated during that decades-long time period related to the remediation, or that all such documents are relevant to the claims and defenses in this matter. A brief adjournment of the initial conference will enable the parties to meet and confer further to identify a proper scope for Tier One Discovery and/or to present Your Honor with disagreements to resolve.

Further, the Town contemplates the exchange of discovery requests pertaining to Northrop Grumman's motion to dismiss before the Town has exercised its right to amend its complaint. That makes no sense. If the Town amends, Northrop Grumman will have to assess whether to answer or file a new motion to dismiss. If Northrop Grumman answers, there will be no basis for such discovery.

Moreover, Northrop Grumman also respectfully requests that formal discovery should not begin until after the Court decides whether it has subject matter jurisdiction over any part of this litigation. *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("Without jurisdiction the court cannot proceed at all in any cause. Courts in this district have stayed discovery where, as here, a pending dispositive motion raises jurisdictional or other questions that do not require discovery to be resolved. *See, e.g.*, *Josie-Delerme v. Am. Gen. Fin. Corp.*, No. CV 2008-3166 NG/MDG, 2009 WL 497609, at *1 (E.D.N.Y. Feb. 26, 2009); *Telesca v. Long Island Hous. P'ship, Inc.*, No. CV 05-5509(ADS)(ETB), 2006 WL 1120636, at *1



(E.D.N.Y. Apr. 27, 2006) (citations omitted); see also *Miller v. Brightstar Asia, Ltd.*, No. 20CV4849GBDJLC, 2020 WL 7483945, at *4 (S.D.N.Y. Dec. 21, 2020) (granting motion to stay while 12(b)(1) motion was pending, in part because claims contingent on a future event were not ripe).[2]

While the parties still need to meet and confer on this issue, the Town has not yet identified a proper request for discovery into the issue of subject matter jurisdiction raised by Northrop Grumman's motion to dismiss. For example, Northrop Grumman does not understand what discovery is needed to confirm what the Town does not and cannot deny: Northrop Grumman is engaged with EPA and will not undertake remediation of PCBs without EPA approval. And while the Town claims it needs discovery into the exhibits attached to Northrop Grumman's motion to dismiss, it does not identify what it lacks. Discovery is not needed for materials that are publicly available and/or have long been in the Town's possession. Further, the Town's inability to challenge prior DEC action due to the expiration of the statute of limitations does not require discovery. And the Town presumably knows the facts underlying the Town's allegations criticizing DEC; otherwise one would not have expected the Town to file them with the Court. Again, a brief adjournment to allow the parties to continue their discussions, understand what the Town wants consistent with Your Honor's rules about Tier One Discovery, what is relevant, and how much of that, if any, is not already available to the Town, will promote efficiency for both the parties and the Court.

Moreover, this Court has "considerable discretion" to find "good cause" to stay discovery while a dispositive motion is pending. *Lawson v. Rubin*, No. 17-CV-6404 (BMC), 2018 WL 4211446, at *1 (E.D.N.Y. Mar. 7, 2018) (citations omitted). In response to Northrop Grumman's pre-motion letter, the Town has already dropped one of its claims. And the Town's response above strongly suggests it will amend its complaint further. Without clarity on plaintiff's claims, Northrop Grumman is being asked to respond to a moving target. The Court and the parties should await further clarity on the operative pleading before embarking on formal discovery.

Further, Northrop Grumman's jurisdictional arguments are strong, and any prejudice that a stay would cause at this early stage in the litigation is minimal. *Little v. City of New York Dep't of Fin.*, No. 20CV1979RPKMMH, 2022 WL 3704214, at *4 (E.D.N.Y. Aug. 26, 2022) ("At this early stage, a limited stay will not prejudice plaintiff and will avoid unnecessary discovery costs."). Given the jurisdictional grounds for NG's pending motion to dismiss, which will be

---

[2] The cases the Town cites are distinguishable, because they did not involve the challenge to subject matter jurisdiction found here. Further, in *Kanowitz v. Broadridge Fin. Solutions, Inc.*, the court did stay discovery, permitting only a limited inquiry into plaintiffs' states of residency to address the discrete jurisdictional requirements under the Class Action Fairness Act. 13–civ–649, 2014 WL 1338370, at *11–12 (E.D.N.Y. Mar. 31, 2014).



fully submitted by the end of March if the Town does not amend its complaint, the current uncertainty as to the operative pleading, and the minimal prejudice a stay could cause, a stay on formal discovery until the Court decides subject matter jurisdiction is appropriate here.

**Proposed Schedule.** As for the proposed schedule, the parties propose the following schedules based on Your Honor's Individual Rules and Discovery Plan Worksheet:

| **Town's Proposed Discovery Plan Worksheet Deadlines** | |
|---|---|
| **Tier I Discovery** | |
| Deadline for completion of Rule 26(a) initial disclosures | March 15, 2024 |
| Completion date for Phase I Discovery as agreed upon by the parties | March 15, 2024 |
| Joint status letter to the Court | 7 days after Court ruling on Northrop Grumman motion to dismiss |
| Status conference TBD by the Court | 15 days after Court ruling on Northrop Grumman motion to dismiss |
| **Tier II Discovery and Motion Practice** | |
| Motion to join new parties or amend the pleadings | 15 days after status conference |
| All fact discovery completed by | 9 months after deadline for joining parties/amend the pleadings |
| Expert discovery complete by | 3 months after close of fact discovery |
| Final date to take first step in dispositive motion practice | 1 month after close of expert discovery |
| Joint proposed pretrial order | 30 days after dispositive motion practice deadline |



| **Northrop Grumman's Proposed Discovery Plan Worksheet Deadlines**[3] | |
|---|---|
| **Tier I Pre-Settlement Discovery** | |
| Deadline for completion of Rule 26(a) initial disclosures and HIPAA-compliant records authorizations: | Within 60 days of the adjourned initial conference followed by meeting and conferring on possible settlement and Tier Two Discovery consistent with Your Honor's rules. |
| Completion date for Phase I Discovery as agreed upon by the parties: | Within 60 days of the adjourned initial conference followed by meeting and conferring on possible settlement and Tier Two Discovery consistent with Your Honor's rules. |
| **Tier II Discovery and Motion Practice** | |
| All fact discovery completed by: | To be discussed as part of the plan for Tier Two discovery. |
| Town's Expert disclosures and reports due | Two months after close of fact discovery. |
| Northrop Grumman's expert disclosures and reports due | Two months after completion of depositions of Town's experts. |
| Expert discovery completed by: | Upon completion of depositions of Northrop Grumman's experts. |
| Final date to take first step in dispositive motion practice: | 60 Days after Completion of Expert Discovery. |
| Joint proposed pretrial order | 30 days after rulings on dispositive motions. |

[3] The Town did not send Northrop Grumman a proposed Discovery Plan worksheet until this afternoon. Thus, the parties present their positions in the charts above without having met and conferred. Northrop Grumman would discuss the schedule called for by the worksheet prior to an adjourned status conference (or the next scheduled status conference).



The parties propose to submit a joint status letter seven business days after receiving an order from the Court on Northrop Grumman's motion to dismiss, and to schedule a telephone status conference with the Court thereafter at the Court's convenience.

                              Respectfully submitted,

*/s/ J. Michael Showalter*

J. Michael Showalter
Matthew F. Prewitt
ARENTFOX SCHIFF LLP
1301 Avenue of the Americas, 42nd Floor
New York, NY 10019 United States
Phone: 212.484.3900
Email: matthew.prewitt@afslaw.com
        j.michael.showalter@afslaw.com

Russell Selman (*pro hac vice*)
ARENTFOX SCHIFF LLP
233 S. Wacker Drive, Suite 7100
Chicago, IL 60606
Phone: 312.258.5500
Email: russell.selman@afslaw.com

*Counsel for Plaintiff*
*Town of Oyster Bay, New York*

*/s/ Mark A. Chertok*

Mark A. Chertok
SIVE, PAGET & RIESEL, P.C.
560 Lexington Avenue, 15th floor
New York, New York 10022
(212) 421-2150
mchertok@sprlaw.com

Grant J. Esposito
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
(212) 969-3010
gesposito@proskauer.com

*Counsel for Defendant*
*Northrop Grumman Systems Corp.*