IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

<table>
<tr><td>

TOWN OF OYSTER BAY,

       Plaintiff,

   v.

NORTHROP GRUMMAN SYSTEMS
CORPORATION,

       Defendant.

</td><td>

Civil Action No. 23-CV-07146

</td></tr>
</table>

## STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION

Plaintiff Town of Oyster Bay and Defendant Northrop Grumman Systems Corporation (each a "Party" and together the "Parties") recognize that this litigation may involve discovery of a large number of electronic documents. This Stipulated Order was negotiated amongst, and represents compromises by, the Parties. The discovery of electronically stored information ("ESI") and hard copy documents in the Parties' possession, custody, or control will be conducted in accordance with the following Stipulated Order for Discovery of Electronically Stored Information and Hard Copy Documents ("ESI Stipulated Order" or "Stipulated Order").

I.  **General**

A.  The Parties shall take reasonable steps to comply with the procedures set forth in this Stipulated Order. Consistent with the Parties' obligations under the Federal Rules of Civil Procedure, if a producing Party cannot comply with any material aspect of this Stipulated Order, that Party shall inform the other Party in writing (including email), before production why compliance with the Stipulated Order is not possible. No Party may seek relief from the Court

concerning compliance with the Stipulated Order unless it has first conferred with the other Party in good faith.

**B.** To the extent reasonably possible, the production of ESI shall be conducted to maximize efficient access to ESI and minimize related discovery costs. The terms of this Stipulated Order shall be construed so as to ensure the prompt, efficient, and cost-effective exchange of ESI consistent with applicable law, the local rules, any orders by this Court, and the Parties' discovery stipulations.

**C.** This Stipulated Order does not enlarge, reduce, or otherwise affect the scope of discovery of ESI in this litigation as governed by the Federal Rules of Civil Procedure, the local rules, and the Court's orders, nor does it imply that ESI produced under the terms of this Stipulated Order is relevant or admissible in this or other litigation.

**D.** Subject to this Stipulated Order, the Parties' objections, responses to requests for production of documents, and the Stipulated Protective Order in this case, all ESI that is responsive to discovery requests and not protected as attorney-client privileged, attorney work product, or otherwise immune from discovery shall be produced in the manner provided by this Stipulated Order. Nothing in this Stipulated Order shall be interpreted to require disclosure of materials that a Party contends are protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege. Additionally, nothing in this Stipulated Order shall be deemed to waive or limit any Party's right to object to the production of certain ESI, or to move to compel such production, pursuant to the Federal Rules of Civil Procedure, on the ground that the sources are not reasonably accessible because of undue burden or cost, or on the ground that there is good cause for the documents' production, respectively.

E.     The Parties agree to meet and confer in good faith on any issue regarding ESI, as necessary, including any issues relating to custodians and data sources, that arise under this Order or otherwise. In the event that the Parties cannot reach an agreement on a disputed matter following a meet and confer, the Parties shall submit the matter to the Court.

F.     The Parties agree to promptly alert the other Party concerning any technical problems associated with complying with this Stipulated Order. To the extent compliance with this Stipulated Order imposes an unforeseen and undue burden with respect to any Stipulated Order listed herein, the Parties shall promptly confer in an effort to resolve the issue.

## II.   **Discovery Procedures**

A.     Documents may be produced on external hard drives or other electronic media or by electronic secure file transfer. Each production will also identify: (1) the producing Party's name; (2) the production date; and (3) the Bates number range of the materials contained in the production. Service via electronic secure file transfer is effective if addressed to counsel of record for the receiving Party.

B.     Such productions will take the following form:

1.   <u>Bates Numbering</u>. Bates numbers must consist of consecutive alphanumeric characters, dashes, periods, or underscores without spaces. Each page of a produced document will be electronically branded with that page's Bates number. This format must remain consistent across all production numbers and be placed on the lower right corner of all images so as not to unreasonably obscure any information. No other legend or stamp will be placed on a document image other than confidentiality designations (where applicable) or redactions.

2.   <u>Confidentiality Designations</u>. The confidentiality designation requested for each document will be electronically branded on each page of the document and must also be indicated in the metadata load file.

3.   <u>De-duplication</u>. A Party will de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) on a global scale, and will provide

3

information identifying all custodians who possessed any given record or ESI by populating the All Custodians field in the metadata load file.

For emails with attachments, the hash value is generated based on the parent/child document grouping. Parent-child relationships (the association between an attachment and its parent document in a document family) that have been maintained in the ordinary course of business will be preserved for both ESI and hard copy documents. For example, for electronic production of a hard copy folder with documents contained in the folder, the cover/title of the folder will be produced first, with all contents of the folder in sequential document order behind the containing folder. For email families, the parent-child relationships (the association between emails and attachments) should be preserved, *i.e.*, email attachments should be consecutively produced with the parent email record. A Party may also de-duplicate "near-duplicate" email threads as follows: In an email thread, only the final-in-time document must be produced, assuming that all previous emails in the thread (including direct, cc, and bcc recipients; subject; and body text) are contained within the final message. Where a prior email contains an attachment, that email and attachment will not be removed as a "near-duplicate." If de-duplication using MD5 or SHA-1 hash values is not possible, the Parties will meet and confer to discuss other proposed methods of de-duplication. Each Party will use its best efforts to filter out system files and application executable files by using a reasonable hash identification process. Flash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

4.   <u>Paper Documents</u>. Paper (hard copy) documents will be scanned, logically unitized, and produced electronically as specified in the form of production (below). If scanned images of paper documents are produced, the load file must include an additional field to identify the documents being produced as scans of paper documents.

5.   <u>Custodian Information</u>. Custodian information will be populated for paper documents, emails, and loose e-docs by the person or department from where the document was collected. The custodian field for email may be populated with the Company name only when the company has a consolidated email server that does not preserve "custodian" information.

6.   <u>TIFF Settings</u>. Documents will be TIFFed showing full color, track changes, comments, hidden text, and speaker notes. Comments, speaker notes, and hidden text should appear in the text files.

7.   <u>Translations</u>. The producing Party does not have an obligation to create an English translation of a document for purposes of discovery. English translations, created in the ordinary course of business, of responsive, non-privileged documents will be produced. The producing Party must associate an identified English translation to a foreign language original. If English translations (or summary translations) are created as part of litigation, they must be produced.

8. <u>Attachments</u>. Only responsive attachments need to be produced. Non-responsive attachments may be withheld. If any one attachment to an email is responsive, then the full cover email will be produced for context, regardless of responsiveness. If an attachment is withheld, the producing Party will indicate the removal in the load file of the email that is produced or in a separate log of non-responsive attachments.

## III.   **Form of Production**

A.   Documents will be produced as single-page 300 DPI Group IV Tagged Image File Format (TIFF) files, with the exception of certain documents that will be produced natively. Searchable text for documents will be provided in multi-page text files. Documents of certain types will be produced in native form as specified below.

a. <u>Load Files</u>. Each production volume will include an image load file in Opticon (OPT) format[1] and a metadata load file in Concordance (DAT) format.[2] If reasonably available, and excluding paper documents or documents with metadata redacted in whole or in part based on privilege, the metadata load file will include the metadata fields listed in Appendix A. The Parties are not required to manually populate a metadata field identified in Appendix A if such fields cannot be extracted from a document, with the exception of the fields listed in Paragraph C.4. below, which will be populated by the producing Party.

b. <u>Multimedia Files</u>. Multimedia files, including audio and video, will be produced in the native format in which they were maintained or documents with metadata business. If the multimedia files are maintained in an unusual or proprietary format, the Parties will meet and confer in good faith regarding the appropriate form of production.

c. <u>Native Documents</u>. Excels, csvs, presentations with animations, spreadsheets, and other similar files will be produced in native form and will be accompanied by a single-page image placeholder. The placeholder will indicate that the document was produced in native form, and will be endorsed with the document's Bates number and confidentiality designation. The filename will match the Bates number assigned to the native file. The Parties will meet and confer in good faith regarding native production of any file types that are not readily producible or useable in the format specified herein.

---

[1] OPT files are comma-delimited text files that use the format: Page ID, Volume, Image Path, Doc Break, Folder Break, Box Break, Page Count. Breaks are denoted by placing a Y in the appropriate field. There is one line for each page.

[2] DAT are delimited ASCII files that use character 20 as field delimiter, character 254 as text delimiter, and character 174 for line breaks within a field.

d. <u>Paper Documents</u>. The following fields must be populated in the metadata load file: Bates Begin, Bates End, Family Begin, Family End, Page Count, Custodian, and Text File. Additionally, the producing Party will include a field in the metadata load file designating the source document as a paper or hard copy document.

e. <u>Compressed Files</u>. Compression file types (*e.g.*, .CAB, .GZ, .TAR, .z, and .ZIP) will be decompressed in an iterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

f. <u>Other</u>. A Party that receives a document produced in a format specified above may make a reasonable request to receive the document in its native format. The Parties agree to meet and confer in good faith regarding any Party's request that specific documents be produced in native format, in color, or in some other form or format.

**B.    Redacted Spreadsheets**. For redacted spreadsheet files (*e.g.*, MS Excel, Numbers, comma delimited data, tabular numerical data, etc.), the Parties will produce redacted spreadsheet files as native rather than image files, and to the extent it is reasonably practicable, will use a native redaction tool. The producing Party will identify the natively redacted spreadsheet as redacted in the associated "Redacted" metadata field. If a Producing Party cannot produce redacted Excels using a native redaction tool, the Parties will meet and confer to agree on a mutually agreeable format of production.

**C.    Search Terms**. If the producing Party elects to use search terms to locate potentially responsive ESI, the producing Party must disclose the search terms before using the searches to narrow the universe of reviewed documents. If requested, the Parties agree to meet and confer in good faith regarding the selection of terms to ensure the terms are sufficiently tailored to capture documents relevant to the above-captioned litigation. If the Parties cannot agree on search terms after reasonable, good-faith negotiations, the requesting Party may seek relief in accordance with the Court's discovery dispute procedures.

**IV.    <u>Identification and Collection of ESI</u>**

6

A.      The producing Party agrees to conduct a reasonable inquiry into potential sources for unique and discoverable ESI within the producing Party's possession, custody, or control, and to produce any responsive, non-privileged records identified from such sources. ESI may be collected from local hard drives, network drives, or active server directories (i.e. shared drives), reasonably accessible email accounts, and removable or portable media (including thumb or flash drives, external hard drives, CDs, or DVDs), to the extent that counsel for the producing Party determines, after reasonable inquiry, that these sources may contain potentially relevant ESI. Non-custodial sources, such as databases, shared email accounts, will also be searched to the extent the producing Party determines, in good faith and in compliance with applicable Federal Rules of Civil Procedure and ethical obligations, such locations are reasonably likely to yield relevant information within the producing Party's possession, custody, or control.

B.      **Custodians, Data Sources, and Date Ranges**. The Parties will confer regarding the identification and collection of sources of relevant ESI. The Parties will meet and confer regarding: (a) the identity and role of custodians possessing relevant information from whom documents will collected and produced; (b) relevant data sources, including custodial, noncustodial, and third-Party documents; and (c) applicable and appropriate timeframes for the collection, review, and production of documents.

C.      **TAR, Predictive Coding, and Keyword Searching**. If the producing Party elects to use Technology-Assisted Review ("TAR"), Predictive Coding, or keyword searching as part of its process to collect, review, or produce responsive documents, the Party must disclose this fact and relevant metrics (*e.g.*, confidence interval, non-privileged seed sets, keywords, and other relevant information) so that the Parties can confer on the sufficiency of the approach.

## V. **Preservation**

 **A.** The Parties acknowledge and agree that they have taken reasonable and proportional steps to preserve all potentially relevant or related ESI in their possession, custody, or control. Nonetheless the Parties do not concede the relevance or responsiveness of ESI subject to preservation under each Party's preservation notices or litigation holds.

 **B.** The Parties agree that the circumstances of this case do not warrant the preservation, collection, review, or production of ESI that is not reasonably accessible. The Parties agree that the following ESI is not reasonably accessible:

  1. Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve without disabling the operating system.

  2. Online access data, such as temporary internet files, history, cache, cookies.

  3. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

  4. Data maintained or duplicated in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes or other media, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten, or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy.

  5. Data remaining from systems no longer in use that is unintelligible on the systems in use.

 **C.** Nothing in this Stipulated Order shall prevent a Party from subsequently requesting that ESI or other information identified above be preserved and produced if specific facts

demonstrate a particular need for such evidence that justifies the burden of preservation and retrieval.

**VI.    Inadvertent Production of Privileged Information**

In accordance with FED. R. EVID. 502(d), and other applicable law, neither the attorney-client privilege nor the work-product protection is waived by inadvertent disclosure in discovery in this case. Any inadvertent production of privileged or work-product protected information is not a waiver in this case, nor in any other litigation. The mere production of documents, information, or materials in this litigation as part of a mass production shall not itself constitute waiver for any purpose. Any Party that receives privileged or protected material shall, upon written request from the producing Party (including by email), destroy or return such material (and all copies or images of such material, as well as any notes or communications reflecting the content of such material) to the producing Party within three (3) days of the producing Party's request, regardless of whether the receiving Party agrees with the claim of privilege or work-product protection. Should the receiving Party choose to destroy the documents, it will notify the producing Party of that destruction within three (3) days of receipt of the written request for return. Alternatively, at the producing Party's expense, the receiving Party can return such documents and copies to counsel for the producing Party.

The return or destruction of a document over which the producing Party has asserted a claim of privilege or protection as set forth above shall be without prejudice to the receiving Party's right—within fourteen (14) days of the return or destruction of the document—to seek an order from the Court directing the production of the document on the ground that the claimed privilege or protection is invalid or inapplicable.

**VII.    Privilege and Privilege Logs**

A.      The Parties agree that a Party need not, as general matter, include on a privilege log:

  a.  privileged material created or exchanged after the initiation of this litigation between, on the one hand, an attorney from the firm who is counsel of record for a Party in this litigation, and, on the other hand, the Parties; and

  b.  privileged material related to activities undertaken in compliance with the duty to preserve information (including, but not limited to, litigation hold letters) that are protected from disclosure under Federal Rules of Civil Procedure 26(b)(3)(A) and (B).

  c.  Notwithstanding the above Stipulated Order in Section VIII(A)(a)-(b), all privileged material should be preserved in the event of a later dispute with respect to the propriety of any privilege claim or the sufficiency of the privilege log. The Parties agree that they will confer at a later time to determine whether any other categories of privileged documents can be excluded from the logging requirement.

  d.  Nothing in this Stipulated Order shall prevent a Party from subsequently requesting that a privilege log be created for certain documents or communications under Section VIII(A)(a)-(b), if that Party reasonably believes that such a log is necessary to evaluate another Party's production of documents in this matter.

B.      Email threads may only be withheld in their entirety if all responsive portions are privileged; otherwise, threads should be produced with privileged portions redacted. Duplicative emails suppressed using email thread suppression need not be reflected on a Party's privilege log.

C.      The Parties may agree to produce a privilege log containing categorical entries or a representative sample of the privileged documents being withheld, grouping privileged entries by

10

category or type; if a Party proposes this, it shall provide its best estimation of the number of privileged items that would otherwise appear in each category of withheld documents. The categorical privilege log must include information sufficient about each category of withheld documents for the other Party to assess the privilege claimed. This information includes, but is not limited to, the author, recipient, date, document type, subject, and privilege claimed.

D.     If a Party produces a document-by-document privilege log, the following information must be provided (as applicable) for each document: (1) unique document identification number; (2) document type; (3) family relationship; (4) date; (5) author; (6) each recipient; (7) copies(s); (8) privilege or protection claimed; and (9) description of the subject matter of the document or electronically stored information sufficient to enable the requesting Party to assess the validity of the privilege claim.

E.     If a Requesting Party believes in good faith that one or more items in a Producing Party's privilege log should be produced and are inappropriately being withheld, then it shall raise the issue as to each log entry with the Producing Party in writing with reasonably sufficient detail so that the Producing Party may understand the Requesting Party's complaint. Within ten (10) business days, the Producing Party shall respond in writing. If the response does not satisfy the Requesting Party, than the Parties shall meet and confer and if the dispute as to the privileged nature of the material cannot be resolved, then the Requesting Party may seek relief from the Court as to the specific log entries raised with the Producing Party. Nothing in this procedure to challenges to a Party's privilege log modifies the Producing Party's burden to establish the privileged nature of the withheld document.

## VIII.   Costs and Burden

In accordance with FED. R. CIV. P. 26 (b)(2)(C), the Parties agree that the burdens placed

on them during discovery must be proportional to the litigation. The Parties believe that each side is best positioned to control and bear its own cost, as is standard, in the absence of legal authority providing an exception to that general rule and a basis for cost-shifting.

**IX.**     **Protective Order**

Nothing in this Stipulated Order shall be deemed to limit, modify, or override any provision of the Protective Order stipulated and agreed to by the Parties in this action. In the event of any conflict between this Stipulated Order and the Protective Order, the provisions of the Protective Order will govern.

**IT IS SO ORDERED.**

_____
Hon. Anne Y. Shields
U.S. Magistrate Judge

August 13, 2024            The Parties to this action hereby stipulate to the entry of this Order.

/s/ J. Michael Showalter _____
Matthew F. Prewitt
J. Michael Showalter
Sonul Rao
ARENFOX SCHIFF LLP
1301 Avenue of the Americas, 42nd Floor
New York, NY 10019
Phone: 212.848.3900
Email: mattew.prewitt@afslaw.com
        j.michael.showalter@afslaw.com
        sonul.rao@afslaw.com

Russell Selman (_pro hac vice_)
ARENTFOX SCHIFF LLP
233 S. Wacker Drive, Suite 7100
Chicago, IL 60606
Phone: 312.258.5500
Email: russell.selman@afslaw.com

/s/ Robert J. Baehr _____
Mark A. Chertok
SIVE, PAGET & RIESEL, P.C.
560 Lexington Ave.
New York, New York 10022
(212) 421-2150
mchertok@sprlaw.com

Robert J. Baehr
Grant J. Esposito
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
(212) 969-3010
gesposito@proskauer.com

_Attorneys for Defendant Northrop Grumman Systems Corp._

*Attorneys for Plaintiff Town of Oyster Bay*