UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TOWN OF OYSTER BAY,<br><br>       Plaintiff,<br><br>  v.<br><br>NORTHROP GRUMMAN SYSTEMS CORPORATION,<br><br>       Defendant. | Case No. 2:23-cv-07146-NJC-AYS |

# TOWN OF OYSTER BAY'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Matthew F. Prewitt
J. Michael Showalter
Sonul Rao
ARENTFOX SCHIFF LLP
1301 Avenue of the Americas, 42nd Floor
New York, NY 10019
Phone:  312.258.5500
Fax:       212.484.3900
Email:   matthew.prewitt@afslaw.com
            j.michael.showalter@afslaw.com
            sonul.rao@afslaw.com

Russell Selman (*pro hac vice*)
ARENTFOX SCHIFF LLP
233 S. Wacker Drive, Suite 7100
Chicago, IL 60606
Phone:  312.258.5500
Email:  russell.selman@afslaw.com


*Counsel for Plaintiff*
*Town of Oyster Bay, New York*

# TABLE OF CONTENTS

|  |  |  | Page |
|---|---|---|---|
| I. | | THE TOWN'S RESIDENTS FACE POTENTIAL ENDANGERMENT FROM THE PRESENCE OF HEXAVALENT CHROMIUM IN THE PARK SOIL AND THROUGH CONFOUNDING OF FUTURE SAMPLING EFFORTS JUSTIFYING A PRELIMINARY INJUNCTION. | 4 |
| | A. | Permitting Grumman to Redeposit Sludge Alters the "Status Quo" of the Park Because Characterizing the Site is Necessary to Abate Endangerment | 4 |
| | B. | Testing for Hexavalent Chromium Is Necessary to Abate Risk. | 5 |
| II. | | RCRA GIVES THIS COURT JURISDICTION TO COMPEL GRUMMAN TO ABATE RISK. | 6 |
| | A. | DEC's Failure to Act to Address Contamination Demonstrates that Lacks Primary Jurisdiction Here. | 7 |
| | B. | The ROD Lacks Sufficient Specificity to Grant DEC Primary Jurisdiction. | 8 |
| | C. | There Is No Final and Enforceable Order Giving DEC Primary Jurisdiction Over this Dispute. | 9 |
| CONCLUSION | | | 10 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AT&T Corp. v. FCC*,
   967 F.3d 840 (D.C. Cir. 2020) ............................................................................................. 9

*Autauga Cnty. Emergency Mgmt. Commc'n Dist. v. FCC*,
   17 F.4th 88 (11th Cir. 2021) .................................................................................................. 9

*Colorado River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976) ............................................................................................................... 6

*Comm. Ass'n for Restoration of the Env. v. Cow Palace, LLC*,
   80 F. Supp. 3d 1180 (E.D. Wash. 2015) ................................................................................ 6

*D'Amico v. Waste Mgmt. of New York*,
   No. 6:18-CV-06080 EAW, 2019 WL 1332575 (W.D.N.Y. Mar. 25, 2019) ........................... 7

*Ellis v. Trib. Television Co.*,
   443 F.3d 71 (2d Cir. 2006) ..................................................................................................... 7

*Inc. Village of Garden City v. Genesco, Inc.*,
   Case No. 07-cv-5244, 2009 WL 3081724 (E.D.N.Y. Sept. 23, 2009) .................................... 6

*Interfaith Cmty. Org. Inc. v. PPG Indus., Inc.*,
   702 F. Supp. 2d 295 (D.N.J. 2010) ..................................................................................... 7, 9

*Ohio Valley Env't Coal. v. Bluestone Coal Corp.*,
   No. CV 1:19-00576, 2020 WL 2949782 (S.D.W. Va. June 3, 2020) .................................... 2

*Read v. Corning Inc.*,
   351 F. Supp. 3d 342 (W.D.N.Y. 2018) .............................................................................. 8, 9

*Town of Brookhaven v. Sills Rd. Realty LLC*,
   No. CV 14-2286 GRB, 2014 WL 2854659 (E.D.N.Y. June 23, 2014) ................................. 2

*Town of New Windsor v. Avery Dennison Corp.*,
   No. 10-CV-8611 CS, 2012 WL 677971 (S.D.N.Y. Mar. 1, 2012) ................................ 7, 8, 9

**Statutes**

15 U.S.C. § 2619(a)(1) ................................................................................................................ 6

42 U.S.C. § 6972 ......................................................................................................................... 6

**Other Authorities**

*In the town 'Erin Brockovich' made famous, residents still fear dirty water,*
  Washington Post (Dec. 1, 2024) ................................................................................................6

Grumman continues its cynical decades-long use of Bethpage Community Park as a hazardous waste dump. Grumman argues that it is grandfathered from complying with current environmental and human health requirements and only offers vague assurances that it voluntarily might remove some of the contaminated soil someday. Grumman makes absurd claims that it can use a backhoe to dig out and then put back the sludge exactly the way it was before and that drums it buried decades ago never actually leaked, even though those drums contained the same hazardous solvents and metals now found in the adjacent dirt, and some of the drums are now empty. Grumman's lack of candor with this Court and the citizens of Long Island is shocking.

The Town wants Grumman's sludge to be removed from the Park now, not later at Grumman's discretion. Grumman records demonstrate that it knew by the late 1940s the land it later donated to the Town was pervasively contaminated with waste. While Grumman refers to the drums it buried under the Park as "potential objects" and denies they contain hazardous waste, *see* Opp. at 6, the reality is the exact opposite. There is nothing "potential" about leaking drums full of bright green and yellow sludge under a baseball field. (Shea Supp. Decl. ¶ 5.)



**This photograph is from April 18, 2024 of excavated drum #11. The red arrow points to chromium-containing waste inside the drum based on yellow-green color and laboratory analysis.**

1



**This photograph is from May 29, 2024 inside a test pit. The red arrow points to yellow-green material inside the test pit consistent with chromium waste found in nearby buried drums.**

Grumman says reburying sludge maintains the "status quo" (*i.e.* the Park as Grumman's landfill) because their backhoe operator will try to put the sludge back in the same holes without redistributing any of it. (Opp. at 13-14.) Under this "status quo," Grumman continues the 20-year barricade around the Park baseball field; residents remain fearful; and any real cleanup happens only when and how Grumman chooses without any meaningful enforcement by DEC or EPA. The Town needs this Court's immediate help to stop the endless pattern of lax regulators and an arrogant and disingenuous polluter. *See Ohio Valley Env't Coal. v. Bluestone Coal Corp.*, No. CV 1:19-00576, 2020 WL 2949782, at *8 (S.D.W. Va. June 3, 2020) (citizen suits are a necessary backstop to regulatory enforcement). This Court has "wide discretion in determining whether to grant a preliminary injunction." *Town of Brookhaven v. Sills Rd. Realty LLC*, No. CV 14-2286 GRB, 2014 WL 2854659, at *7 (E.D.N.Y. June 23, 2014).

For the reasons further explained below, injunctive relief is appropriate here because:

*First*, testing of the sludge where Grumman's drums were disinterred show extremely high levels of toxic waste, including highly toxic hexavalent chromium, a hazardous substance Grumman denies was disposed at the Park. (Shea Supp. Decl. ¶ 8.)

2

***Second***, Grumman's proposal to use the sludge as fill at the Park will spread toxic substances that were buried before and will exacerbate Park conditions. (Shea Supp. Decl. ¶¶ 4-7.)

***Third,*** DEC has failed to act to block Grumman from exacerbating the contamination. (ECF No. 40-1, Mot. at 10-11.)

***Fourth***, even if Grumman dearly wants the benefits of being "grandfathered" to standards DEC has revised (to be effective after the public comment period closes in January 2025), *see* Opp. at 20 n.9, those standards do not bind this Court.[1]

***Fifth,*** by letter to Grumman on November 27, 2024, DEC has notified Grumman that it must revise its sampling Work Plan to start sampling for hexavalent chromium and has implicitly declared its 2013 Record of Decision (ROD) to be provisional. (Shea Supp. Decl., Ex. H.)

Although Grumman wants to downplay the contaminants now, when Grumman sued its insurers in 2012, it produced a detailed exposé of its toxic waste burial malfeasance at the Park in the vain hope of being reimbursed by its old policies.[2] Today, Grumman's proposal quite literally is to mix highly contaminated soil in numerous holes across the Park, leave it there indefinitely, and then perhaps years from now use diluted and obfuscated sampling data to do the bare minimum it can get away with. The Town cannot accept this cynical attempted dilution as a solution to Grumman's pollution. The Town appeals to this Court to issue a preliminary injunction barring Grumman from redepositing contaminated sludge dirt in the Park.

---

[1] On November 27, 2024, DEC rejected Grumman's sampling plan – submitted many months after originally requested – for reasons including failing to include enough samples; failing to sample for metals including hexavalent chromium; and for relying on the ROD to backstop regulatory demands. While the Town is pleased to see DEC somewhat engaged, the singular rejection gives the Town no comfort whatsoever that DEC will force Grumman to meaningfully engage on Park cleanup.
[2] *See Travelers Indem. Co. v. Northrop Grumman Corp.*, 3. F. Supp. 3d 79, 84-96 (S.D.N.Y. 2014). The court granted summary judgment to the insurers and refused to shift costs from Grumman to its insurers.

**I. The Town's Residents Face Potential Endangerment from the Presence of Hexavalent Chromium in the Park Soil and Through Confounding of Future Sampling Efforts Justifying a Preliminary Injunction.**

Grumman argues that the Town "fails to establish any imminent risk of harm" capable of justifying issuance of an injunction. (Opp. at 9.) However, Grumman has never meaningfully investigated hexavalent chromium that was found in recent soil sampling. It claims that any hexavalent chromium found in the soil will degrade on its own. (Shea Decl., Exhibit B, September 25, 2024 letter from Mark Chertok.) Further, Grumman redepositing sludge into holes will render it impossible for Town residents to characterize the Park for remediation.

**A. Permitting Grumman to Redeposit Sludge Alters the "Status Quo" of the Park as Because Accurately Characterizing the Site Is Necessary to Abate Endangerment.**

Redepositing sludge makes characterizing the Park more difficult. Thus, excavating, mixing, and then filling numerous unlined holes with highly contaminated sludge does not "preserve the 'status quo'" as Grumman suggests. (*See* Opp. at 14 nn. 5-6.) Instead, Grumman will use heavy equipment to remove sludge dirt, pile it on the ground, and use it as fill without any protective wraps or caps. Even with the maximum possible care, using a backhoe to excavate ten-foot holes, place sludge dirt in piles, and then push it back into the holes will unavoidably result in extensive redistribution of contaminants. (*See* Shea Decl., Exh. 40-3 ¶ 2; Shea Supp. Decl. ¶¶ 4-5.) Redeposition will alter the status quo in the Park and likely generate new exposure pathways through surfacing buried materials which could be released to air as dust. (Shea Supp. Decl. ¶ 4.) It also will obfuscate and confuse the future sampling DEC is requesting Grumman to complete. (Shea Supp. Decl. ¶ 9.) Reliable sampling is essential to ensure that any "final"

cleanup by Grumman is actually protective of human health and the environment. (Shea Supp. Decl. ¶ 12.)

Grumman relies on two glaring lies about site conditions. First, Grumman tells this Court that its "drums did not leak" *see* Opp. at 5, but photos and sampling tell a different story. (*See* Shea Suppl. Decl. ¶ 5.) Second, Grumman states that the Town seeks "the excavation of virtually every molecule of PCBs from underneath the eighteen-acre Park." (Opp. at 4.) Instead, the Town has demanded only that the soil be cleaned up to DEC's "unrestricted use" standard – simply so that the Town may have the "unrestricted" right to use the Park for the public good without undertaking new sampling and new cleanups over and over again for hundreds of years. (ECF No. 40-1, Mot. at 10-11.)

B. **Testing for Hexavalent Chromium Is Necessary to Abate Risk.**

Grumman's refusal to test for hexavalent chromium and rush to dig and distribute what likely are the most heavily contaminated parts of the Park smacks of a bad faith attempt to destroy evidence. (Opp. at 19.) (ECF No. 40-1, Mot. at 11-12.) Under Grumman's current plan, sludge dirt with hexavalent chromium will inevitably be moved around because Grumman has made no effort to investigate where it is. (Shea Supp. Decl. ¶¶ 6-7.) Grumman is putting human health and the environment at risk in a rush to dilute the future samples of its own contamination. (*Id.* ¶¶ 6-7.) (*Cf.* Opp. at 9.)

Hexavalent chromium has been found in proximity to Grumman's barrels, and even DEC has demanded Grumman further investigate. (Shea Supp. Decl., Ex. H, Nov. 27, 2024 Letter.) While Grumman submits that this site should be "grandfathered" or regulated as if it were the 1960s, *see* Opp. at 21, the better course is to remediate the Park in a manner consistent with the Town's past and future use of this land as youth ballfields. Under RCRA, courts do not wait until

after the harm already has happened to find endangerment – a threatened risk is enough. *See, e.g. Comm. Ass'n for Restoration of the Env. v. Cow Palace*, *LLC*, 80 F. Supp. 3d 1180, 1228 (E.D. Wash. 2015) (chastising a defendant for suggesting that "this Court wait to act until a young infant in the area is first diagnosed" with tumors related to contamination). The point of RCRA is to mitigate risk *first*, but doing so requires characterization activities Grumman will not conduct without Court compulsion.[3]

## II. RCRA Gives This Court Jurisdiction to Compel Grumman to Abate Risk.

Federal environmental statutes include citizen suit mechanisms to protect parties like the Town from bad actors like Grumman who exploit lax or overburdened regulators. RCRA Section 7002, 42 U.S.C. § 6972; TSCA, 15 U.S.C. § 2619(a)(1). Grumman distorts the jurisdictional prerequisites for this Court's exercise of jurisdiction under TSCA and RCRA. Again, Grumman's argument that the Town's federal claims are simultaneously moot due to agency involvement and not ripe based on potential future agency action is inherently contradictory. (Opp. at 9-10.)

Grumman argues that the parties' failure to reach agreement should bar this Court's jurisdiction. (Opp. at 17.) But that is precisely why the Town needs the Court's help; this Court has an "unflagging obligation" to exercise jurisdiction over the Town's RCRA and TSCA claims. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Indeed, Congress passed RCRA, conferring jurisdiction on federal courts to address environmental issues raised by citizens where agency action has failed to address the grievances asserted in pre-suit notice letters. *Inc. Village of Garden City v. Genesco, Inc.*, Case No. 07-cv-5244, 2009 WL

---

[3] Hexavalent chromium contamination continues to cast a long shadow over communities faced with lasting chemical contamination of their drinking water. *See In the town 'Erin Brockovich' made famous, residents still fear dirty water,* Washington Post (Dec. 1, 2024), https://www.washingtonpost.com/nation/2024/12/01/erin-brockovich-town-dirty-water/.

3081724, at *9 (E.D.N.Y. Sept. 23, 2009); *Interfaith Cmty. Org. Inc. v. PPG Indus., Inc.,* 702 F. Supp. 2d 295, 302 (D.N.J. 2010).

    A.    **DEC's Failure to Act to Address Contamination Demonstrates that Lacks Primary Jurisdiction Here.**

DEC and EPA's failure to compel Grumman to clean up the Park necessitates that this Court should use its jurisdiction at a minimum to protect the Park from further contamination. Grumman argues this Court should not usurp DEC's jurisdiction, citing the primary jurisdiction doctrine. (Opp. at 10-13.) The primary jurisdiction doctrine does not counsel abstention of jurisdiction where, as here, an agency has abdicated its responsibility to compel meaningful action needed to address environmental issues raised by a party seeking injunctive relief. Similarly, the primary jurisdiction doctrine does not compel this Court to bend its knee to anticipate future agency action when there is actual or potential harm to citizens or the environment, particularly when DEC has failed to demand action by the violator in compliance with state regulations and pursued "no formal enforcement actions." *D'Amico v. Waste Mgmt. of New York*, No. 6:18-CV-06080 EAW, 2019 WL 1332575, at *16 (W.D.N.Y. Mar. 25, 2019).

Even if the Court applies the test for primary jurisdiction here, the Town wins under that standard.[4] Although Grumman attempts to complicate the environmental issues at play, the Town's ask is a simple one – that Grumman be precluded from re-distributing toxic sludges in holes at the Park and instead test and then cart away to an approved landfill the materials it excavates according to undisputed regulatory standards. *See Town of New Windsor v. Avery*

---

[4] *Ellis v. Trib. Television Co.*, 443 F.3d 71, 82–83 (2d Cir. 2006) ("(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made."

7

*Dennison Corp.*, No. 10-CV-8611 CS, 2012 WL 677971, at *9 (S.D.N.Y. Mar. 1, 2012) (stating that a dispute touching upon technical environmental issues does not require deference to DEC).

### B. The ROD Lacks Sufficient Specificity to Grant DEC Primary Jurisdiction.

Second, Grumman asserts that DEC is forever bound to the 2013 ROD, even as the facts on the ground (*i.e.* newly discovered buried toxic waste drums) and science (DEC's revised soil clean-up standards) both change. DEC's November 27 letter illustrates that DEC sees the ROD as already superseded and expects a "more robust" plan from Grumman to address identified shortcomings. (Shea Supp. Decl. ¶ 12, Ex. H.) Grumman relies on *Read v. Corning Inc.*, 351 F. Supp. 3d 342 (W.D.N.Y. 2018) to argue that deferral to agency action is appropriate any time an agency has acted at all related to a subject. In *Read*, DEC set forth "a very detailed course of remediation" which the Court then deferred to under the primary jurisdiction doctrine, reasoning that the issues "involve[d] technical or policy considerations within the agency's particular field of expertise." *Id.* at 354-355. By contrast, DEC's ROD did not expressly address hexavalent chromium or demand particular action of Grumman in disposing of the sludge dirt with finality. Instead, DEC said only "more to come . . . much later."

Furthermore, where the regulatory agency fails to enforce key regulatory mandates, courts do not defer citing primary jurisdiction. *See, e.g., Town of New Windsor v. Avery Dennison Corp.*, No. 10-CV-8611 CS, 2012 WL 677971, at *9 (S.D.N.Y. Mar. 1, 2012) (in "over eleven years" since a cleanup agreement was signed, involved land was not cleaned up and "[t]hus, as a practical matter, that . . . NYSDEC oversight ha[s] not been effective in remedying the contamination of Plaintiff's land also justifies this Court's retention of jurisdiction.") DEC's failure to enforce the twelve-year-old ROD justifies court intervention because of the potential imminent threat to human health and the environment still exists unabated.

8

### C. There Is No Final and Enforceable Order Giving DEC Primary Jurisdiction Over this Dispute.

To the third and fourth factors, Grumman misrepresents that DEC has made a final, enforceable order regarding the issue of backfilling sludge in the Park. DEC's oral comments during recent meetings with the Town and the EPA are neither final nor enforceable.[5] (Shea Supp. Decl., Ex. H, DEC's Oct. 30, 2024 Letter.) There is no danger of inconsistent rulings that weighs against court intervention here. DEC's potential future factual findings alone are not a basis to decline jurisdiction. *Town of New Windsor v. Avery Dennison Corp.,* No. 10-CV-8611 CS, 2012 WL 677971, at *10 (S.D.N.Y. Mar. 1, 2012) (determining that although "NYSDEC factual findings may help to inform this Court," any ruling on the defendant's motion to dismiss based on primary jurisdiction would not necessarily conflict with any formal DEC rulings). While courts have stayed actions to defer to an agency's interpretation of regulations it administers, a stay or dismissal to DEC would be inappropriate here because the Town seeks relief under RCRA and TSCA. *See Interfaith Cmty. Org. Inc. v. PPG Indus., Inc.*, 702 F. Supp. 2d 295, 311 (D.N.J. 2010) ("The issues in this case are also not particularly within the [New Jersey Department of Environmental Protection] DEP's discretion. The questions before this Court arise under the language of the RCRA, a statute which the DEP has no discretion to interpret."); *but see Autauga Cnty. Emergency Mgmt. Commc'n Dist. v. FCC*, 17 F.4th 88, 95 (11th Cir. 2021) (deferring to FCC for construction of federal statute it administers); *AT&T Corp. v. FCC*, 967 F.3d 840, 844 (D.C. Cir. 2020) (same).

The balance of the harms of deferring to DEC inaction and the costs of delay in providing the Town's residents with relief from the imminent harm of exacerbating Park conditions weighs

---

[5] The *Read* court noted that the involve DEC Order was "not merely some preliminary document; it . . . [sets] forth a very detailed course of remediation." 351 F. Supp. 3d at 355.

in favor of the Court's exercise of jurisdiction over this preliminary injunction motion and over the Town's RCRA and TSCA claims.[6]

## **CONCLUSION**

For the reasons set forth herein, the Town respectfully requests that its Motion for a Preliminary Injunction be granted.

Dated: December 2, 2024

Respectfully submitted,

*/s/ Matthew F. Prewitt*
Matthew F. Prewitt
J. Michael Showalter
Sonul Rao
ARENTFOX SCHIFF LLP
1301 Avenue of the Americas, 42nd Floor
New York, NY 10019
Phone:  312.258.5500
Fax:     212.484.3900
Email:  matthew.prewitt@afslaw.com
           j.michael.showalter@afslaw.com
           sonul.rao@afslaw.com

Russell Selman (*pro hac vice*)
ARENTFOX SCHIFF LLP
233 S. Wacker Drive, Suite 7100
Chicago, IL 60606
Phone:  312.258.5500
Email:  russell.selman@afslaw.com

*Counsel for Plaintiff*
*Town of Oyster Bay, New York*

---

[6] Contrary to Grumman's contention that the Town somehow delayed in moving for its injunction and that the Town delayed Grumman's remedial effort (Opp. at 3, 9), the Town's Request for a Preliminary Injunction is Timely. The Town was engaged in dialogue about Grumman's Anomaly Work Plan through its approval on October 30, 2024. (*See, e.g.*, ECF No. 40-5 at 54-55, 57.) Had Grumman acceded to the Town's requests for common sense, no court's intervention would be required. When it became clear that Grumman would not properly dispose of its toxic sludge, the Town filed this motion for a preliminary injunction on November 11, 2024. The Motion is therefore timely.

10