

**ArentFox Schiff LLP**

233 South Wacker Drive
Suite 7100
Chicago, IL  60606

312.258.5500   **MAIN**
312.258.5600   **FAX**

afslaw.com

January 23, 2025

VIA ECF

**Matthew F. Prewitt**

Partner

312.258.5583   **DIRECT**

Hon. Nusrat J. Choudhury
United States District Court
for the Eastern District of New York
100 Federal Plaza
Courtroom 1040
Central Islip, NY 11722

matthew.prewitt@afslaw.com

Re:   *Town of Oyster Bay v. Northrop Grumman Systems Corporation (2:23-cv-07146)*

Dear Judge Choudhury:

As requested by the Court at oral argument on January 16, 2025, the Town of Oyster Bay respectfully submits this letter to provide the Court with additional authorities regarding Defendant Northrup Grumman's assertion that the purported finality of the 2013 Record of Decision ("2013 ROD") bars some part of the federal law claims asserted by the Town.[1]  As explained below:

- environmental Records of Decision ("RODs") are as a matter of law subject to regularly recurring agency review, and both the U.S. Environmental Protection Agency ("EPA") and New York Department of Environmental Conservation ("DEC") routinely amend RODs to account for new information or changes in applicable regulations; and
- the 2013 ROD's PCB remedy will necessarily be amended following required EPA review because it directly conflicts with established federal law.

To the extent Grumman has suggested that RODs stand immutable for perpetuity, the exact opposite is true.  RODs are routinely reviewed and modified.  The 2013 ROD is not a contract or binding grant of rights to Grumman, and Grumman has only itself to blame that it must now do different or additional work at the Bethpage Community Park.

---

[1] This finality (or lack thereof) of the 2013 ROD is not relevant to this Court's power to grant relief on Count I of the Amended Complaint. As has been discussed at great length in pleadings and briefing and at oral argument, RCRA grants federal courts jurisdiction to address conditions that may present and imminent and substantial endangerment regardless of whether there is State administrative action. *See Dague v. City of Burlington*, 935 F.2d 1343, 1353 (2d Cir. 1991), *rev'd in part on other grounds*, 505 U.S. 557 (1992).



Grumman's reliance on the supposed finality of the 2013 ROD's PCB remedy thus is at best misplaced. Because the PCB remedy was selected without the participation of EPA or the Town in violation of federal law, EPA and DEC have acknowledged that Grumman must develop and submit a new proposed plan for characterizing and remedying PCB contamination. The 2013 ROD's PCB remedy simply is no longer even relevant to the Town's TSCA claims.[2]

The Town addresses each of these points in greater detail below.

**Periodic review and modification of environmental remedies is routine.**

At Superfund sites listed on the National Priorities List, the National Contingency Plan ("NCP") requires that any selected remedy that will allow contaminants to remain at the site at levels "above levels that allow for unlimited use and unrestricted exposure" must be reviewed by the lead agency "no less often than every five years after the initiation of the selected remedial action." 40 C.F.R. § 300.430(f)(4)(ii). CERCLA § 121(c) clarifies that the purpose of these five-year reviews is to "assure that human health and the environment are being protected by the remedial action being implemented." 42 U.S.C. § 9621(c). EPA has published formal guidance for conducting 5-year reviews, which states that 5-year reviews should also be conducted for any remedy which will take longer than 5 years to complete. USEPA, Comprehensive Five-Year Review Guidance, OSWER Directive 9355.7-03B-P at 1-3 (June 2001).[3]

EPA's guidance provides questions to be answered by each 5-year review, including, as is particularly relevant here: "Are the exposure assumptions, toxicity data, cleanup levels, and remedial action objectives used at the time of remedy selection still valid?" *Id.* at 4-4. EPA guidance explains that the purpose of this question is in part to identify whether "[c]hanges in the promulgated standards . . . may impact the protectiveness of the remedy." *Id.* The guidance goes on to explain that "although [selected remedies] generally are 'frozen' at the time of ROD signature, in conducting a five-year review, you should determine the effect of a newly

---

[2] Although not directly relevant to the Town's TSCA claims under Count II of the Amended Complaint, the Town further notes that the 2013 ROD's metals remedy will necessarily be amended because it fails to include parameters for characterizing and remediating hexavalent chromium. Even though this chemical was clearly part of the waste streams that Grumman treated and disposed of in the area that now is part of the Park, Grumman turned a blind eye to hexavalent chromium until the Town's own sampling found multiple detections of hexavalent chromium in 2024, after the Town had commenced this suit. *Compare* discussion in Shea Aff., Dkt. #40-3 ¶¶ 8-23 *to* Sept. 23, 2024 Letter from Mark Chertok to Russell Selman, Dkt. #40-5 n.1. DEC has indicated that future sampling for PCBs and hexavalent chromium should proceed concurrently based on analysis of the same samples for both contaminants, as well as others, in whatever sampling Grumman is required to undertake. *See* November 27, 2024, letter from DEC to Grumman, Dkt. #42-2 at 7-9.

[3] Available at https://semspub.epa.gov/work/02/562810.pdf.



Hon. Nusrat J. Choudhury
January 23, 2025
Page 3

promulgated or modified standard or the protectiveness of the remedy originally selected in the ROD." *Id.* at 4-5.[4]

For New York Inactive Hazardous Waste Disposal sites (such as the Park), DEC like EPA regularly amends RODs and has published guidance for making changes to selected remedies. *See* DEC, Guidance Document DER-2 – "Making Changes to Selected Remedies" (April 1, 2008).[5] Guidance Document DER-2 states that a ROD's selected remedy may be changed whenever "DEC becomes aware of information which substantially supports the need to change the remedy[.]" *Id* at § III. DEC states that an additional purpose of the guidance is to "to ensure consistency with the national contingency plan (NCP) such that cost recovery is not jeopardized." *Id.* That is, DEC will change and amend RODs *at any point* if needed to address new facts or to ensure compliance with federal law.

In fact, DEC has already issued an amended ROD for the groundwater contaminant plume originating from the former Grumman settling ponds on the land that is now the Park.[6] The original ROD for the groundwater plume, referred to as Operable Unit 2, was issued in March 2001. *Id.* at 10. In December 2019, DEC issued an Amended ROD encompassing Operable Unit 2 "…to address off-site groundwater contamination not adequately addressed under the existing RODs…This remedy specifically addresses these threats to public health and the environment associated with this off-site groundwater contamination." *Id.* at 6.

Guidance Document DER-2 articulates separate processes depending on the scope of the change. "Minor" changes that result in less than 20% change in costs and/or will not materially alter the selected remedy do not require a formal amendment and may be effected through a memorandum drafted by the project manager and placed in the site file. Guidance Document DER-2 at § V. "Significant" changes that result in a 15% to 50% change in costs and/or impact an essential part of the remedy (DEC provides the example of the decision that part of the selected remedy is no longer necessary to protect human health) may be effected through a formal "Explanation of Significant Differences" approved by the DEC division director and a concurrence from the New York State Department of Health. *Id.* "Fundamental" changes resulting in greater than 25%

---

[4] The guidance cites the preamble for the NCP, in which EPA stated that "a policy of freezing [selected remedies] at the time of ROD signing will not sacrifice protection of human health and the environment because the remedy will be reviewed for protectiveness every five years, considering new or modified requirements at that point." 55 FR 8757 (March 8, 1990).

[5] Available at https://dec.ny.gov/regulatory/regulations/making-changes-to-selected-remedies-der-2.

[6] Available at https://extapps.dec.ny.gov/docs/remediation_hudson_pdf/130003aarodou2ou3.pdf.



changes in costs and/or requiring a new approach to the remedy require a formal amendment to the ROD, which must pass through public notice and comment. *Id.*

Additionally, because Guidance Document DER-2 was published shortly after the promulgation of DEC's soil cleanup objectives ("SCOs") (6 NYCRR 375-6), the guidance addresses whether those new (at the time) cleanup standards would require changes to selected remedies. *Id.* DER-2 states that a change in site remedy "may be considered" if the new SCOs, in conjunction with the other factors "that constitute the basis for selecting a final remedy," demonstrate that "additional controls and/or remediation are necessary for the final remedy to be protective of public health and the environment." *Id.* As explained below, DEC is in the process of updating its SCOs, including the level of contamination, that are directly relevant for the Park.

These policies make plain that any ROD issued for a contaminated site, including an ROD issued by DEC pursuant to state law, is not a final, immutable decree but rather a living document that is expected to change when confronted with new facts or new regulations in order to ensure the protection of human health and the environment or to ensure compliance with the NCP.

**The 2013 ROD's PCB remedy is irrelevant to the Town's TSCA claims because existing federal law and proposed changes to state regulations make inevitable that the selected remedies and cleanup objectives set forth in the 2013 ROD will be significantly or fundamentally modified.**

In Count II of the Amended Complaint, the Town has requested that this Court compel Grumman to prepare and submit to EPA a timely application for PCB cleanup at the Park that complies with applicable federal law. It is undisputed that this is a necessary step for Grumman to comply with the 2013 ROD, but the Town alleges that Grumman is impermissibly delaying and avoiding this requirement, and that DEC is not diligently prosecuting the issue.

The requested relief does not require the Court to involve DEC in any way or to directly require or oversee any changes to the 2013 ROD, and as a result Grumman's reliance on the 2013 ROD's PCB remedy is irrelevant to the Town's claims in Count II. As explained below, should the Court grant the requested relief, the natural result will be that DEC will need to amend the 2013 ROD to account for the eventual EPA-approved cleanup plan, but the Court will not need to be involved in that process.

First, as explained in the Amended Complaint and in briefing (*see* Dkt. #22 at ¶¶83-94; Dkt. #32 at 13), the Toxic Substances Control Act ("TSCA") and EPA regulations promulgated pursuant to TSCA explicitly preempt DEC's development and approval of the PCB remedy outlined in the 2013 ROD. Section 6 of TSCA directs EPA to develop regulations governing the disposal of PCBs. 15 U.S.C. §2605(e). Section 18 of TSCA in turn states that federal regulations developed pursuant



Hon. Nusrat J. Choudhury
January 23, 2025
Page 5

to TSCA Section 6 (such as the PCB rules) preempt any state laws or regulations that are not identical to federal law. *See* 15 U.S.C. §§ 261(c), (d)(1)(a)(iii)(bb), (d)(1)(B). While the full extent of this preemption has not been addressed by the Courts, EPA has explained that the federal PCB rules preempt state law and state programs that provide for less stringent cleanup requirements and that EPA's authority over PCBs is non-delegable. *See* USEPA, Disposal of Polychlorinated Biphenyls (PCBs), 63 FR 35384-01 at 35416 (June 29, 1998).[7]

As explained in the Amended Complaint and in briefing, it is undisputed that the 2013 ROD's PCB sampling and cleanup plan constitutes a "risk-based cleanup and disposal" under TSCA and that, as a result, Grumman must submit an application to and obtain written approval from EPA for any PCB sampling and cleanup plan. *See* 40 C.F.R. § 761.61(c).[8]

However, the 2013 ROD PCB remedy materially failed to meet EPA requirements for developing a risk-based disposal plan:

- First, EPA regulations require the landowner (here, the Town of Oyster Bay) to be involved with the remedy selection and certify the materials in the application. *See* 40 C.F.R. § 761.61(a)(3)(i)(E) (requiring risk-based disposal applications to include a certification signed by both the person conducting the cleanup *and* the owner of the property). Landowner involvement is even more critical when the proposed remedy involves institutional controls such as a deed restriction which the landowner will be responsible for maintaining and complying with. *See* 40 C.F.R. § 761.61(a)(8). The Town alleges that it was not meaningfully involved with the development of the ROD, and plainly the Town cannot be expected to certify an application based upon the 2013 ROD's PCB remedy.

---

[7] "EPA is not requiring any State to develop a TSCA look-alike program or to expand its RCRA hazardous waste program to include PCBs. However, any State may pursue either option, provided, for TSCA look-alike programs, that the requirements are at least as stringent in the protection of health and the environment as the applicable TSCA requirements, and under expanded hazardous waste programs or any State program that has been approved by EPA, the risks of injury to health or the environment from PCBs are eliminated or reduced by actions taken under those authorities. The TSCA PCB Program is not delegable, and EPA is not delegating responsibility for implementing TSCA section 6(e) to the States."

[8] The requirement for EPA approval is not limited to cleanup plans only but instead applies broadly to any person "wishing to **sample, extract, analyze**, cleanup, or dispose of PCB remediation waste . . ." 40 C.F.R. § 761.61(c) (emphasis added).



- Second, EPA regulations require adequate site characterization *prior to* the development of any cleanup objectives or the selection of a remedy. *See* 40 C.F.R. § 761.61(a)(2).[9] There can be no doubt that the characterization of PCBs at the Park was not sufficient to meet this requirement. In 2023 (by which time Grumman had conducted extensive sampling beyond what existed at the time of the 2013 ROD), EPA informed Grumman that there *still* were significant gaps in Grumman's characterization of the site that precluded EPA review of any PCB cleanup plan. *See* Dkt. #22 at ¶¶ 33-34.

Additionally, DEC's own actions since the Town initiated this litigation acknowledge at least implicitly that the 2013 ROD's PCB remedy was *ultra vires* and will need to be modified. As previously described to this Court, DEC is in the process of updating its guidance for PCB remediation and has explicitly stated that the purpose of the update is to make DEC's requirements "consistent" with federal law. Dkt. #37-1. In the proposed guidance, DEC states that in order to comply with federal law and to ensure protection of human health, it can only review and approve cleanups allowing for a maximum of 10 parts per million ("ppm") of PCBs in subsurface soils. DEC, Draft Revisions to Commissioner Policy, CP-51 at 11-12.[10] All other cleanup plans may only be reviewed and approved by EPA. *Id.* The 2013 ROD allows for the permanent placement of subsurface soil containing PCBs up to 50 ppm. Dkt. #31-2 at ¶22. Thus, DEC has at least tacitly acknowledged that it lacked the authority to review or approve of the 2013 ROD's PCB remedy.

Moreover, DEC explicitly acknowledges that the required EPA review and approval of a PCB cleanup plan requires "[d]elineation of the nature and extent of PCBs to 1 ppm." Draft Revisions to Commissioner Policy, CP-51 at 11. It is undisputed that Grumman has not delineated PCBs to 1 ppm, and in fact Grumman's most recent sampling *proposal* still did not meet this requirement. *See* November 27, 2024, letter from DEC to Grumman, Dkt. #42-2 at 7. Most recently, while acknowledging that Grumman's proposed sampling plans *would* have met the minimum requirements set forth in the 2013 ROD, DEC has advised Grumman that a more extensive sampling plan is now necessary and that Grumman must reach an agreement with the Town in order to satisfy EPA requirements. *See* January 22, 2025, letter from DEC to Edward Hannon (attached as Exhibit A). Again, DEC is implicitly acknowledging that the 2013 ROD PCB remedy does not comply with federal law and will be superseded if and when Grumman submits a TSCA-compliant application to EPA.

---

[9] Note that while this subsection references self-implementing, rather than risk-based, cleanups, all information required for a self-implementing cleanup notification must be included in a risk-based cleanup application. 40 C.F.R. § 761.61(c).

[10] Available at https://dec.ny.gov/sites/default/files/2024-06/draftcp51revised.pdf.



Hon. Nusrat J. Choudhury
January 23, 2025
Page 7

Despite all of this, Grumman continues to cling to the 2013 ROD and refuses to entertain any cleanup plan which differs from the 2013 ROD's selected PCB remedies.[11] Grumman's continuing obstinance in the face of state regulators belies the Town's urgent need for this Court's assistance as requested in Count II of the Amended Complaint, to order Grumman to prepare and submit to EPA a timely application for PCB cleanup at the Park that complies with applicable federal law.

In sum, despite universal agreement that Grumman must submit a TSCA-compliant application to EPA prior to implementing any PCB cleanup plan, as of today Grumman and DEC still have not met any of the requirements for preparing a PCB cleanup plan that is compliant with federal law, and as such the 2013 ROD's selected PCB remedy will inevitably need to be modified. Accordingly, Grumman's reliance on the 2013 ROD's PCB cleanup levels and selected remedy is not relevant to the Town's request that this Court enjoin to Grumman to comply with federal law by submitting a valid application to EPA.

Sincerely,

ArentFox Schiff LLP

*/s/ Matthew F. Prewitt*

Matthew F. Prewitt

MFP

cc:     All counsel of record (via ECF)

---

[11] To the extent that Grumman suggests it is bound to the terms of the 2013 ROD until DEC issues a formal amendment, this argument is disingenuous because the 2014 Administrative Order on Consent intended to "enforce" the 2013 ROD explicitly allows Grumman to unilaterally opt out of the PCB remedy and to challenge specific provisions of the ROD, not within the four-month timeline for review of agency actions under New York law, but *at the time DEC approves or denies specific workplans submitted by Grumman*. See 2014 Administrative Order on Consent, Dct. #32-5 at 4, 6-8.