

**ArentFox Schiff LLP**

233 South Wacker Drive
Suite 7100
Chicago, IL  60606

312.258.5500   **MAIN**
312.258.5600   **FAX**

afslaw.com

**Russell B. Selman**
Partner
312.258.5527   **DIRECT**
russell.selman@afslaw.com

**Matthew F. Prewitt**
Partner
312.258.5583   **DIRECT**
matthew.prewitt@afslaw.com

February 27, 2025

**VIA ECF**

Hon. Nusrat J. Choudhury
United States District Court
for the Eastern District of New York
100 Federal Plaza
Courtroom 1040
Central Islip, NY 11722

Re:   *Town of Oyster Bay v. Northrop Grumman*
      *Systems Corporation (2:23-cv-07146)*

Dear Judge Choudhury:

Pursuant to the Court's February 22, 2025, Order, the Town of Oyster Bay (the Town) respectfully sur-replies to Northrop Grumman's (Grumman's) February 20, 2025, letter (ECF No. 56).

*First*, Grumman's sudden, timing-related objection to the Town's participation in sampling the Town's own soil is meritless given the Town's history of sampling side-by-side with Grumman. During the 2024 drum investigation, the Town and Grumman both took soil samples from the bucket of Grumman's excavator without causing delay in the work. Supplemental Declaration of Matthew DeVinney ¶ 3 (attached as Exhibit A). The Town then conducted its own laboratory testing on its samples at its own expense. *Id.* at ¶ 5. Here, the Town merely asks to continue past practice during Grumman's forthcoming anomaly investigation. Based on the Town's experience and on discussions with the Town's experts, sampling of this nature will not delay Grumman's work. *Id.* at ¶¶ 3-4.

*Second*, Grumman's objection that the Town's request will result in contaminated soil sitting in stockpiles for extended periods is similarly meritless. Grumman could place the excavated soil in covered metal containers and avoid the risk of soil sitting in stockpiles while sampling results are pending. *See generally* 40 C.F.R. Part 265, Subpart I (regulating interim storage of hazardous waste in containers).

*Third*, independent collection and laboratory analysis by the Town is needed both to accurately assess the extent of Grumman's contamination and to preserve evidence for this litigation. *See* Exh. A at ¶ 6 (during the prior drum investigation, the Town's samples consistently identified greater levels of contamination than Grumman's samples taken from same location). Indeed, it



Hon. Nusrat J. Choudhury
February 27, 2025
Page 2

was the Town's testing, not Grumman's, that detected hexavalent chromium, further underscoring the need for the Town to collect its own samples. *Id.* at ¶ 7.

**Fourth**, the Town's participation in sampling does not require Grumman to rewrite the DEC-approved Pilot Survey Area Anomaly Investigation Work Plan (ECF No. 47-13). Given that the Town is the property owner and sampling like this is routine, DEC is unlikely to perceive the Town's request as requiring any amendment of the involved plans. Landowner sampling is common practice. *Id.* at ¶ 8.

**Fifth**, Grumman's assertion that the Town refuses to speak to Grumman is inaccurate; the Town's Public Works Department has been in contact with Grumman's engineers on a frequent and recurring basis to develop Grumman's data gap sampling plan. Declaration of Matthew Russo ¶ 3 (attached as Exhibit B). Technical discussions regarding the manner of Grumman's data gap sampling and anomaly investigation are the pending issues of the moment. At this juncture it is the engineers who need to be talking--and they are.

**Finally**, the Town attaches a recent DEC letter to Grumman containing DEC's comments on Grumman's data gap sampling plan (Exhibit C) (relevant text highlighted). The letter acknowledges collaboration between Grumman and the Town to facilitate Grumman's data gap sampling while enabling the Town's pool to open this summer. *See id.* at 1. The Town's demand to sample during the anomaly investigation will not delay Grumman's data gap sampling, which is anticipated to begin shortly. *See id.* at 4. The letter also reflects DEC's recognition that the Town and Grumman will have the information needed to discuss and agree on a Risk-Based Disposal Application to EPA after data gap sampling is complete. *Id.* at 1.

Respectfully submitted,

ArentFox Schiff LLP

*/s/ Russell B. Selman*          */s/ Matthew F. Prewitt*

Russell B. Selman              Matthew F. Prewitt


cc:    All counsel of record (via ECF)