UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TOWN OF OYSTER BAY,

　　　　　Plaintiff,

　　v.

NORTHROP GRUMMAN SYSTEMS
CORPORATION,

　　　　　Defendant.

Case No. 2:23-cv-07146-NJC-AYS

## TOWN OF OYSTER BAY'S MEMORANDUM OF LAW IN OPPOSITION TO NORTHROP GRUMMAN'S PARTIAL MOTION TO DISMISS

Matthew F. Prewitt
Sonul Rao
ARENTFOX SCHIFF LLP
1301 Avenue of the Americas, 42nd Floor
New York, NY 10019
Phone:　312-258-5500
Fax:　　212.484.3900
Email:　matthew.prewitt@afslaw.com
　　　　sonul.rao@afslaw.com

Russell Selman (*pro hac vice*)
ARENTFOX SCHIFF LLP
233 S. Wacker Drive, Suite 7100
Chicago, IL 60606
Phone:　312-258-5500
Email:　russell.selman@afslaw.com


*Counsel for Plaintiff*
*Town of Oyster Bay, New York*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

BACKGROUND ................................................................................................... 3

ARGUMENT ....................................................................................................... 6

I.     Grumman's Particularity Arguments Exceed the Scope of this Court's Order ................. 6

II.    The Town Alleges its Fraudulent Misrepresentation Claim With Plausibility and Particularity ......................................................................................... 7

    A.    The Town Alleges an Extensive and Detailed Series of Specific Factual Misrepresentations and Omissions ........................................................... 7

        i.    Grumman's Omissions Are Material ....................................... 10

        ii.    Grumman's Statements Are Facts, Not Opinions .................... 12

        iii.    Grumman's "Actions" Produced Omissions that Deceived the Town ...... 12

    B.    Grumman Knew its Misrepresentations and Omissions Were False ................... 13

    C.    Grumman Expected and Intended That the Town Would Rely on its Misrepresentations and Omissions ....................................................... 14

        i.    Grumman Had and Has the Motive and Opportunity to Commit Fraud to Avoid Environmental Investigation and Remediation Costs ............... 15

        ii.    Grumman Acted Recklessly by Concealing its Disposal of Highly Toxic Hexavalent Chromium ....................................... 18

        iii.    Grumman Intended for the Town to Rely on its Representations to DEC .............................................. 18

    D.    The Town Justifiably Relied on Grumman's Submissions to the Environmental Regulator, DEC, to Accurately Reflect the Park's Environmental Condition ...... 20

    E.    The Town Has Suffered Environmental Costs and Lost Use of the Ballfield Due to Grumman's Fraud....................................................... 21

III.    The Town Alleges Its Negligent Misrepresentation Claim with Plausibility and Particularity ............................................................ 22

    A.    The Town and Grumman Share a "Special Relationship" under the *Kimmell* Factors ....................................................... 22

    B.    Grumman Negligently Provided False Information ............................. 25

    C.    The Town Reasonably Relied on Grumman's Misstatements and Omissions ........................................................................... 25

CONCLUSION.................................................................................................... 25

**Cases**

*34 Prince Equities LLC v. Marvel Architects PLLC*,
   No. 595264/2021, 2023 WL 187923 (Sup. Ct. Jan. 13, 2023) ..............................................24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................................7

*Atkins v. Apollo Real Est. Advisors, L.P.*,
   No. CV-05-4365, 2008 WL 1926684 (E.D.N.Y. Apr. 30, 2008) ..............................9

*Barron Partners, LP v. LAB123, Inc.*,
   593 F. Supp. 2d 667 (S.D.N.Y. 2009)........................................................................10

*United States ex rel. Bilotta v. Novartis Pharms. Corp.*,
   50 F. Supp. 3d 497 (S.D.N.Y. 2014)....................................................................9, 25

*Brown v. Cerberus Cap. Mgmt., L.P.*,
   104 N.Y.S.3d 62 (N.Y. App. Div. 1st Dept. 2019)..................................................23

*Cargo Logistics Int'l, LLC v. Overseas Moving Specialists, Inc.*,
   557 F. Supp. 3d 381 (E.D.N.Y. 2021) .......................................................................6

*Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*,
   465 N.Y.S.2d 606 (N.Y. App. Div. 4th Dept. 1983) ........................................21, 22

*United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*,
   865 F.3d 71 (2d Cir. 2017)..........................................................................................6

*Connaughton v. Chipotle Mexican Grill, Inc.*,
   29 N.Y.3d 137 (2017) ............................................................................................21, 22

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
   375 F.3d 168 (2d Cir. 2004).....................................................................................25

*Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*,
   680 F. Supp. 3d 322 (S.D.N.Y. 2023).....................................................................23

*Germain v. Nielsen Consumer LLC*,
   655 F. Supp. 3d 164 (S.D.N.Y. 2023).....................................................................21

*Golobe v. Mielnicki*,
   2025 WL 864512 (N.Y. Mar. 20, 2025) ...................................................................19

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*,
  58 F. Supp. 2d 228 (S.D.N.Y. 1999)...............................................................................20, 21

*Homeward Residential, Inc. v. Sand Canyon Corp.*,
  298 F.R.D. 116 (S.D.N.Y. 2014) ...................................................................................9

*John Blair Commc'ns, Inc. v. Reliance Cap. Grp., L.P.*,
  549 N.Y.S.2d 678 (N.Y. App. Div. 1st Dept. 1990)...............................................19

*Kauffman v. New York Presbyterian Hosp.*,
  762 F. Supp. 3d 309 (S.D.N.Y. 2025)...........................................................................11

*Kimmell v. Schaefer*,
  675 N.E.2d 450 (N.Y. 1996)................................................................................22, 23, 25

*Laboy v. Ontario Cnty., N.Y.*,
  56 F. Supp. 3d 255 (W.D.N.Y. 2014) ............................................................................7

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006).....................................................................................6, 15, 16

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015)....................................................................................7, 20, 21

*Mandarin Trading Ltd. v. Wildenstein*,
  944 N.E.2d 1104 (N.Y. 2011).............................................................................7, 10, 22, 23

*Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*,
  261 F.R.D. 13 (S.D.N.Y. 2009) ................................................................................22, 23

*New York v. United Parcel Serv., Inc.*,
  253 F. Supp. 3d 583 (S.D.N.Y. 2017), *aff'd*, 942 F.3d 554 (2d Cir. 2019) ............................14

*Sammy v. Haupel*,
  97 N.Y.S.3d 269 (N.Y. App. Div. 3d Dept. 2019) .................................................................20

*Sawabeh Info. Serv. Co. v. Brody*,
  832 F. Supp. 2d 280 (S.D.N.Y. 2011)..........................................................................6, 21

*Schwartzco Enters. LLC v. TMH Mgmt., LLC*,
  60 F. Supp. 3d 331 (E.D.N.Y. 2014) ...................................................................................9

*Solutia Inc. v. FMC Corp.*,
  456 F. Supp. 2d 429 (S.D.N.Y. 2006)...................................................................................9

*Spinnato v. Unity of Omaha Life Ins. Co.*,
  322 F. Supp. 3d 377 (E.D.N.Y. 2018) ..........................................................................15, 18

*STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*,
    648 F.3d 68 (2d Cir. 2011)........................................................................20

*Suez Equity Investors, L.P. v. Toronto–Dominion Bank*,
    250 F.3d 87 (2d Cir. 2001).............................................................23, 24, 25

*Sung Cho v. City of New York*,
    910 F.3d 639 (2d Cir. 2018)......................................................................13

*Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*,
    612 F. Supp. 2d 267 (S.D.N.Y. 2009).......................................................23

*Travelers Indemnity Co. v. Northrop Grumman Corp.*,
    1:16-cv-08778 (S.D.N.Y.) ECF No. 495 ..................................................17

*Travelers Indemnity Co. v. Northrop Grumman Corp.*,
    12-cv-3040 (S.D.N.Y.)..............................................................................17

*Tuosto v. Philip Morris USA Inc.*,
    672 F. Supp. 2d 350 (S.D.N.Y. 2009).......................................................19

*Tyman v. Pfizer, Inc.*,
    16-CV-06941 (LTS) (BCM), 2017 WL 6988936 (S.D.N.Y. Dec. 27, 2017).........................25

*United States v. Applied Memetics, LLC*,
    758 F. Supp. 3d 281 (D. Vt. 2024).............................................................6

*United States v. Wells Fargo Bank, N.A.*,
    972 F. Supp. 2d 593 (S.D.N.Y. 2013).........................................................9

*United Teamster Fund v. MagnaCare Admin. Servs., LLC*,
    39 F. Supp. 3d 461 (S.D.N.Y. 2014).........................................................13

*Wild Bunch, SA v. Vendian Ent., LLC*,
    256 F. Supp. 3d 497 (S.D.N.Y. 2017).......................................................20

*Woori Bank v. RBS Securities, Inc.*,
    910 F.Supp.2d 697 (S.D.N.Y. 2012)..........................................................23

*Young v. Robertshaw Controls Co.*,
    481 N.Y.S.2d 891 (N.Y. App. Div. 3d Dept. 1984) ..................................19

**Statutes**

Resource Conservation and Recovery Act ..............................................................5

**Other Authorities**

Available at https://extapps.dec.ny.gov/docs/remediation_hudson_pdf/der10.pdf ......................11

DEC, *Program Policy DER-10* § 3.1 ........................................................................22

DEC, *Program Policy DER-10 / Technical Guidance for Site Investigation* ................11

*Fraud*, 16 N.Y ........................................................................................................21

N.Y. Comp. Codes R. & Regs. tit. 6 § 375-6.8 ........................................................19

Rule 8's ......................................................................................................................9

Rule 9(b) .............................................................................................................. *passim*

Rule 9(b) and Rule 12(b) ............................................................................................6

Rule 9(b)'s ............................................................................................................6, 8

Rule 12(b)(6) ..............................................................................................................6

Rule 12(b)'s ................................................................................................................6

# INTRODUCTION

It is undisputed that Northrop Grumman Systems Corporation (Grumman) used for decades the land that became the Bethpage Community Park (the Park) as a toxic waste dump. The Town of Oyster Bay's (the Town's) fraud claims arise from Grumman's cynical attempt to minimize its liability and to delay, or escape altogether, its payment obligations as a responsible party under the state and federal environmental laws by withholding and obfuscating material information about Grumman's own activities. It is a basic principle of environmental law that Grumman is obligated to provide complete and truthful information about:

- the industrial processes Grumman used to generate hazardous wastes,

- what hazardous wastes Grumman generated,

- whether and how Grumman treated those hazardous wastes, if at all,

- where Grumman disposed of those wastes at the Park, and

- how Grumman, in light of the full and accurate disclosure of that information, would then conduct an appropriate investigation and remediation.

It is quite typical in environmental litigation that the answers to these questions can, as they do here, create an eight-figure swing in liability for Grumman as the generator and disposer of the hazardous wastes. As the basis for its fraud claim, the Town alleges that Grumman tried to delay, minimize, and avoid outright its response costs by making affirmatively false statements and omissions in its regulatory submissions regarding its response action concerning a single specific contaminant, hexavalent chromium. Hexavalent chromium is a highly toxic carcinogen subject to strict regulation, and the Town has sufficiently alleged in its SAC that Grumman intentionally engaged in a decades-long course of conduct to conceal and obfuscate its actual knowledge about the scope, nature, and location of its disposal of this highly toxic contaminant beneath the Park.

Discovery in this case and related litigation has revealed that Grumman produced multiple hexavalent chromium waste streams. Grumman only treated one of those waste streams at all, and even then, in a manner that did not eliminate hexavalent chromium. Grumman created a story based on what it supposedly knew about its disposal, treatment, and sampling to present to the Town and regulators that yes, there were some low-level hexavalent chromium detections, but they were entirely consistent with a treated waste stream and did not warrant further investigation and remediation. However, Grumman has known, and has never forgotten, about the fact that it produced untreated and incompletely treated hexavalent chromium waste streams. Grumman intentionally concealed that its wastes contained dangerous concentrations of hexavalent chromium from the Town and environmental regulators, including the New York State Department of Environmental Conservation (DEC). Instead, Grumman intentionally created a sampling plan that produced nonmaterial detections of hexavalent chromium, explained those detections as the result of its disposal of treated chromium waste, and then stopped sampling altogether, even though Grumman knew its waste streams contained hexavalent chromium.

Grumman points to its hexavalent chromium test results, but that misses the point. The Second Amended Complaint (SAC) alleges that Grumman knew that it was concealing an untreated waste stream and that it buried drums filled with waste beneath the Park. If Grumman had disclosed the extent of its disposal and waste streams, it would have been obvious that Grumman was required to conduct additional investigation. But Grumman did not investigate. Instead, the drums that Grumman intentionally buried under the Park—and that Grumman only inadvertently uncovered very recently—prompted the Town to undertake its own investigation because Grumman's revelation of engineered concrete structures under the Park also revealed

Grumman's extraordinary lack of candor. The Town's investigation revealed dangerously high levels of hexavalent chromium.

As part of that investigation, the Town insisted that Grumman provide to the Town documents that Grumman has held under seal in a Southern District of New York case about this site. Those documents show beyond any doubt that Grumman knew not in 1950, not in 1960, but in the 2000s that it was withholding from the Town and DEC highly material information about its waste generation and disposal practices at the Park. This is a classic and egregious fraud. Grumman withheld highly material information about its activities to shield itself from liability to the Town, the local government and landowner. Grumman's own brief challenges the Town for not having spoken up earlier about the insufficiency of Grumman's remedy. In a left-handed way, Grumman acknowledges the Town's ability to force Grumman to conduct a complete and adequate investigation and remediation. Grumman correctly anticipated that if the Town knew the full scope of Grumman's activities, the Town would advocate that Grumman complete more expensive investigation and remediation, complete the cleanup itself and sue for cost recovery, or—just as the Town is doing now—sue Grumman to force Grumman to act.

## BACKGROUND

Grumman disposed of its hexavalent chromium waste streams primarily at what is now the Park's baseball field. (SAC ¶ 85.) One waste stream involved Grumman's collecting wastewater used to clean its paint area, imperfectly treating the wastewater in an attempt to remove hexavalent chromium, and pouring the resulting wastewater treatment sludge into lagoons Grumman dug into the Park soil. (SAC ¶¶ 59–63.) Grumman's purpose was to separate water from the solids, allowing contaminated water to percolate into the soil and leaving solid sludge at the base of the lagoon. (SAC ¶ 59.) Grumman's dewatering of its chromium-bearing wastewater sludge shows the scale

and importance of this waste stream's impact on the site. (SAC ¶ 85). Grumman's second, untreated waste stream included paint, coating materials, and paint-soaked rags that Grumman dumped into the ground. (SAC ¶ 59) Grumman knew the specific depths and locations of the rag pits and steel drums that it buried at the site. (SAC ¶¶ 59, 85, 244.)

From the 1980s, when DEC listed Grumman's factory adjacent to the Park (the Bethpage Facility) as a hazardous waste disposal site (SAC ¶ 69), Grumman knew that the Bethpage Facility produced hazardous wastes that were a major source of environmental contamination and that would have to be addressed under federal environmental laws. (SAC ¶ 247.) It also knew that one of the principal disposal areas for those waste streams was the Park. (SAC ¶¶ 59, 244.) Yet throughout the 1980s and 90s, Grumman excluded the Park site from its environmental sampling and reports regarding the Bethpage Facility, even though Grumman's disposal at the Park was essential to Grumman's manufacturing operations and equally essential to Grumman's investigation. (SAC ¶¶ 59, 71, 73.) In 2002, Grumman's contractors accidentally took samples from the Park property instead of the adjacent Bethpage Facility. (SAC ¶¶ 80–82.) It was only when those inadvertent samples showed contamination at the Park that Grumman was forced to admit that it had also contaminated the Park. (*Id.*)

Over the following decade, Grumman conducted a much-delayed environmental investigation of the Park, culminating in Grumman's capstone 2011 Remedial Investigation Report, which falsely represented that "apparent historical activities that occurred in the Park are not well understood or documented." (SAC ¶¶ 41, 89, 92.) Based on Grumman's reports, DEC issued a Record of Decision (ROD) for the Park in 2013 that did not address hexavalent chromium. (SAC ¶¶ 118, 201, 203.)

Pursuant to a DEC order, Grumman implemented soil gas and groundwater remedial systems (the Interim Remedial Measures or IRMs) to clean up volatile organic compounds (VOCs) at the Park. (SAC ¶¶ 97–99, 103.) However, Grumman concealed from both DEC and the Town its knowledge that these systems do not remediate the hexavalent chromium that Grumman knew exists at the Park. (SAC ¶¶ 100, 102, 104.)

The Town filed this lawsuit in 2023, alleging that Grumman's decade-long delay enacting the remedial steps laid out in the ROD put Town residents at risk and caused the Town to lose use of its Park. (SAC ¶¶ 2–3.) Grumman moved to dismiss the Town's Amended Complaint (ECF No. 31), and the Court granted Grumman's motion in part and denied it in part, ruling that the Town could proceed with its claims under the Resource Conservation and Recovery Act (RCRA) and New York common law that Grumman's contamination at the Park may constitute an imminent and substantial endangerment and a public nuisance. (ECF No. 59.)

In 2024, Grumman's contractors inadvertently uncovered more than twenty drums and chunks of yellow sludge that Grumman had buried under the Park. The unearthed sludge tested positive for hexavalent chromium and other contaminants. (SAC ¶¶ 3, 29–32.) The Court granted the Town leave to amend its complaint to address the new discovery of hexavalent chromium. (ECF No. 59.) The Town then filed its SAC, adding claims against Grumman for fraudulent misrepresentation, or, in the alternative, negligent misrepresentation. (ECF No. 62.)

Grumman moved to dismiss the Town's new claims. (ECF No. 64.) In its September 2, 2025, Order, the Court rejected Grumman's two lead arguments and instructed the parties to submit "full briefing to address *only* whether the Second Amended Complaint plausibly alleges claims for fraudulent misrepresentation and negligent misrepresentation under New York common law." (emphasis added).

# ARGUMENT

## I.     Grumman's Particularity Arguments Exceed the Scope of this Court's Order

In its September 2, 2025, Order directing this briefing, the Court ordered the parties to "address *only* whether the Second Amended Complaint *plausibly* alleges claims for fraudulent misrepresentation and negligent misrepresentation under New York common law." (emphasis added). By briefing whether the Town's SAC meets Rule 9(b)'s particularity standard, as opposed to Rule 12(b)'s plausibility requirement, Grumman exceeds the scope of the Court's Order.

Courts are clear that Rule 9(b) and Rule 12(b) impose separate pleading requirements. *Cargo Logistics Int'l, LLC v. Overseas Moving Specialists, Inc.*, 557 F. Supp. 3d 381, 395 (E.D.N.Y. 2021) ("[i]n conjunction with the facial plausibility standard of Rule 12(b)(6), pleadings for common law fraud claims must satisfy the heightened pleading standard set forth in Rule 9(b)") (quotations omitted); *United States v. Applied Memetics, LLC*, 758 F. Supp. 3d 281, 313 (D. Vt. 2024) (separately analyzing Rule 9(b) and Rule 12(b) challenges). This is a crucial distinction, because Rule 9(b) "does not elevate the standard of certainty that a pleading must attain beyond the ordinary level of plausibility." *United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017).

Rule 9(b) does not require particularity for every element of the Town's claim. Of course, the Town must allege misrepresentation with particularity by identifying the statement, the speaker, when and where the statement was made, and why the statement is fraudulent. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). But, the Town may allege Grumman's intent "generally," Fed. R. Civ. P. 9(b), by alleging Grumman's motive and opportunity to commit fraud or recklessness. *Lerner*, 459 F.3d at 290–91. Rule 9(b) does not apply to the damages element of the Town's claim. *Sawabeh Info. Serv. Co. v. Brody*, 832 F. Supp. 2d 280, 305 (S.D.N.Y. 2011).

To survive Grumman's motion to dismiss on the issue on which the Court ordered briefing, plausibility, the Town's complaint must plead sufficient facts for the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "At the pleadings stage, the alleged fraud need only be *plausible* based on the complaint; it need not be more likely than other possibilities." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 174 (2d Cir. 2015). Grumman acknowledges devoting most of its Memorandum of Law (Memo.) to issues other than plausibility; it expressly addresses plausibility only in less than two pages of its 24-page brief. (Memo. at 16–17.) Grumman's decision to devote less than two pages to plausibility tacitly admits the credibility of the Town's claim. Further, the Court should disregard Grumman's particularity arguments as outside the Court's instructions.[1] *See Laboy v. Ontario Cnty., N.Y.*, 56 F. Supp. 3d 255, 259 (W.D.N.Y. 2014) (the Court may strike portions of a submission not in compliance with the Court's instructions).

## II. The Town Alleges its Fraudulent Misrepresentation Claim With Plausibility and Particularity

A New York law fraudulent misrepresentation claim requires "[1] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury." *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1108 (N.Y. 2011). The SAC sufficiently alleges these elements.

### A. The Town Alleges an Extensive and Detailed Series of Specific Factual Misrepresentations and Omissions

Through a series of misrepresentations and material omissions, Grumman concealed an entire waste stream from its site history, hiding the hexavalent chromium and toxic waste drums it

---

[1] For completeness' sake, the Town nonetheless addresses Grumman's particularity arguments.

buried beneath the Park. Grumman's deceit was material because it rendered 20 years of remedial activity incomplete and inadequate because an accurate site history is an indispensable part of any environmental assessment. Due to Grumman's fraud, extensive investigation and remediation must be done, the Park's remedy has been delayed by years, and Town residents have been put at unnecessary risk.

Specifically, the Town alleges the following false representations and omissions:

- Grumman's 2003 Bethpage Community Park Investigation Sampling Report submitted to DEC states "no . . . structures were ever erected on the Property by Grumman," despite Grumman knowing it dug massive, open sludge-drying lagoons into the ground and erected concrete structures around the drums it buried. (*Compare* Exhibit (Exh.) A attached to the Declaration of Mark A. Chertok (Chertok Decl.) § 2.2 *with* SAC ¶¶ 59, 169, 170.)

- Grumman's 2003 Report also "omitted any discussion of Northrop Grumman's past intentional disposal of hexavalent chromium at the Community Park" despite Grumman's knowledge that it had dumped hexavalent chromium at the Park and that hexavalent chromium is toxic. (*Compare* SAC ¶¶ 87, 251 *with* ¶¶ 59, 244, 245.)

- Grumman's 2006 Remedial Investigation/Feasibility Study Work Plan submitted to DEC repeated the falsehood that "buildings and structures were not erected by Grumman" on the property and omitted Grumman's intentional disposal of hexavalent chromium. (*Compare* Chertok Decl. Exh. B § 2.1, SAC ¶¶ 91, 251 *with* ¶¶ 59, 169.)

- Even though Grumman knew that it dumped hexavalent chromium at the Park, Grumman concealed these facts and denied knowledge of its prior dumping, falsely stating in its 2011 Remedial Investigation Report to DEC "the apparent historical activities that occurred in the Park are not well understood or documented." (*Compare* Chertok Decl. Exh. C. § 1.1.2, SAC ¶ 92, 252 *with* SAC ¶¶ 34, 35, 244, 245.)

- Despite knowing that significant concentrations of hexavalent chromium are present at the Park and that its IRMs do not remediate hexavalent chromium, Grumman omitted these facts from its communications with DEC and the Town. SAC ¶¶ 100, 102, 104.

In its Motion to Dismiss, Grumman attempts to dismiss certain of the Town's allegations as conclusory. (Memo. at 10.) This exercise misses the point. In cases like this, where the complaint alleges a multi-decade fraudulent scheme, the Court must balance Rule 9(b)'s particularity

requirement with Rule 8's requirement that the complaint contain a "short and plain statement." *Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 344 (E.D.N.Y. 2014). Accordingly, the Town may allege representative samples of Grumman's fraudulent representations and need not exhaustively catalog each and every instance of Grumman's fraud. *United States ex rel. Bilotta v. Novartis Pharms. Corp.*, 50 F. Supp. 3d 497, 517–18 (S.D.N.Y. 2014); *United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 616 (S.D.N.Y. 2013) ("[W]here the alleged fraudulent scheme involved numerous transactions that occurred over a long period of time, courts have found it impractical to require the plaintiff to plead the specifics with respect to each and every instance of fraudulent conduct.") (collecting cases). What matters is that the plaintiff give the defendant fair notice of the basis for its claim. *Atkins v. Apollo Real Est. Advisors, L.P.*, No. CV-05-4365, 2008 WL 1926684, at *7 (E.D.N.Y. Apr. 30, 2008).

Of course, the Town must allege specific fraudulent misrepresentations and omissions with particularity, and it has done so. Identifying a false statement in a document and explaining why the statement was false satisfies the particularity requirement of Rule 9(b). *See Homeward Residential, Inc. v. Sand Canyon Corp.*, 298 F.R.D. 116, 124 (S.D.N.Y. 2014) (complaint alleging fraudulent statements in a loan application stated a claim because by identifying the specific document it "identif[ied] the speaker (i.e., the borrower), the false statement (e.g., misstatement of income or debt), where the statement was made (the loan application), and the grounds for saying that the statement was false (e.g., a subsequent bankruptcy filing revealing the borrower's true income"). For omissions, "a plaintiff must specify the person responsible for the failure to speak, the context of the omission, and the manner in which the omission misled the plaintiff." *Solutia Inc. v. FMC Corp.*, 456 F. Supp. 2d 429, 449–50 (S.D.N.Y. 2006).

For each of the alleged misrepresentations listed above, the Town identifies the specific report that conveyed the misrepresentation, the false statement in the report or the omission from the report, and why that statement or omission was misleading or false. None of the alleged misrepresentations were oral statements made by an unknown speaker. Rather, each of the alleged misrepresentations is recorded in a document that identifies its source (Grumman), its author or authors (Grumman's employees or agents), its date of creation, and its date of publication. And, the Town alleges why each of those representations was false, by showing that they were contrary to Grumman's actual knowledge. Likewise, for the alleged omissions, the Town alleges the person responsible for the failure to speak (Grumman's employees or agents), the context of the omission (a description of the Park's environmental history or condition) and the manner in which the omission misled the Town (by deceiving the Town into believing there were no significant concentrations of hexavalent chromium at the Park). Thus, the Town has satisfied Rule 9(b).

### i. Grumman's Omissions Are Material

The Town has sufficiently alleged that Grumman's omissions are material. A fraudulent misrepresentation claim may be based on an omission of a material fact. *Mandarin Trading*, 944 N.E.2d at 1108. Grumman's inaccurate site history omitted an entire waste stream of untreated paint wastes and any mention of the drums Grumman buried. (SAC ¶¶ 59, 169, 170.) These omissions misled the Town "into believing that there was not a risk of hexavalent chromium contamination at the Community Park." (SAC ¶ 253.) These omissions (and Grumman's misrepresentations) are material because they prevented the Town from conducting, or demanding that Grumman conduct, a thorough and complete investigation of the Park's environmental condition. *See Barron Partners, LP v. LAB123, Inc.*, 593 F. Supp. 2d 667, 672 (S.D.N.Y. 2009) (an omission is material if it would influence a reasonable person's choice of action.)

A thorough review of a parcel's site history is essential to any environmental investigation. (DEC, *Program Policy DER-10 / Technical Guidance for Site Investigation and Remediation* (May 2010).)[2] Per DEC, characterization of a potentially hazardous site begins with a records search to determine the site's history. (*Id.* § 3.1(a)(2), Appx. 3A(a).) The search should include:

- "the industrial/commercial site history from the time the site was naturally vegetated or utilized as farmland,"

- "all raw materials, finished products, formulations and hazardous substances, hazardous wastes, and petroleum products which are or were present on the site,"

- "present and past production processes, including dates, and their respective water use,"

- "all former and current containers," and

- "surface impoundments, landfills, septic systems and other structures, vessels, conveyances or units that contain or previously contained hazardous substances."

(*Id.* Appx. 3A(a)(1).) Only after this search is complete should sampling be conducted *based on the historical information*. (*Id.* §§ 3.2.1(c)(2), 3.5.1(a)(2).) Here, Grumman failed to disclose four key facts: Grumman dumped untreated waste containing hexavalent chromium directly into the ground (SAC ¶ 59), Grumman buried drums packed with yellow sludge indicative of hexavalent chromium (SAC ¶¶ 29–32), Grumman's treatment process for hexavalent chromium-containing wastewater was not fully effective (SAC ¶ 62), and Grumman knew how deep under the ballfield its sludge-drying lagoons were located (SAC ¶ 244). Thus, Grumman's concealment of its own disposal history rendered incomplete the two decades of sampling work done before Grumman inadvertently uncovered the drums it buried. Had the Town understood Grumman's disposal

---

[2] Available at https://extapps.dec.ny.gov/docs/remediation_hudson_pdf/der10.pdf. The Court may judicially notice and consider government documents in deciding a motion to dismiss. *Kauffman v. New York Presbyterian Hosp.*, 762 F. Supp. 3d 309, 313 n.2 (S.D.N.Y. 2025).

history, it would have called for an adequate site characterization decades ago. Grumman's omissions are material and actionable.

Grumman claims that because it disclosed one small set of facts—the results of some hexavalent chromium samples taken in 2003—it should be excused for misrepresenting its own disposal history over decades. (Memo. at 16–17.) But, Grumman deliberately avoided sampling where it knew it had dumped hexavalent chromium and buried drums and then stopped sampling for hexavalent chromium altogether. (SAC ¶ 90.) Site history is crucial because it determines *how* a responsible actor responds to sampling results. A responsible actor would *keep searching* for contamination it knew to be present, rather than, as Grumman did, sweep the nature and extent of its disposal under the rug. Thus, Grumman's disclosure of some sampling results does not diminish the impact of Grumman's fraudulent site history.

### ii. Grumman's Statements Are Facts, Not Opinions

Grumman's assertion that statements of opinion are not actionable for fraud (Memo. at 10), while true, is irrelevant, because the single statement that Grumman claims is an opinion— Grumman's 2011 statement that "apparent historical activities that occurred in the Park are not well understood or documented" (SAC ¶ 92)—is a statement of fact. In making this assertion, Grumman both denied its actual knowledge of its disposal activities and omitted material facts that it knew about its hexavalent chromium disposal. (SAC ¶¶ 244, 245). Thus, Grumman's claim that the Park's history "is not well understood or documented" is not an opinion on the nuances of environmental investigation; it is a verifiably false statement of fact.

### iii. Grumman's "Actions" Produced Omissions that Deceived the Town

Last, Grumman argues that acts alone are not misrepresentations or omissions and cannot form the basis for a fraud claim. (Memo. at 11 (quoting *United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 473–74 (S.D.N.Y. 2014)).) However, Grumman neglects

to quote *United Teamster Fund*'s next paragraph, where the court held that acts which conceal information and result in an omission *can* form the basis of a fraud claim. *Id.* at 474 (the act of sending invoices that omitted a management fee could support a fraud claim because "[t]he Complaint sufficiently explains the context of the omission and the manner in which [Defendant's] omission misled the [Plaintiffs], and therefore this claim is adequately pled.")

Thus, the acts that the Town alleges Grumman undertook—concealing the inadequacy of its IRMs (SAC ¶ 104), designing its investigation to avoid detection of hexavalent chromium (SAC ¶¶ 90, 146, 196, 250, 273), and interviewing only one of its former employees before preparing a site history which represented that Grumman's disposal history was not well understood (SAC ¶ 252)—are all actionable because they directly led to the false statement that Grumman's disposal history was not well understood or documented. *See United Teamster Fund*, 39 F. Supp. 3d at 474.

### B. Grumman Knew its Misrepresentations and Omissions Were False

The Town alleges that Grumman knew its misrepresentations and omissions were false. (SAC ¶ 100 ("Grumman knew it had not disclosed the full extent of likely contamination"); ¶¶ 88, 244, 245 (at all times, Grumman had actual knowledge of the waste streams it disposed of at the Park, including the depth and location of hexavalent chromium-containing sludge, rags, paint wastes and drums); ¶ 252 (Grumman's disposal activity was known by Grumman's employees and contained in Grumman's records); Taking these allegations as true, as the Court must, *Sung Cho v. City of New York*, 910 F.3d 639, 642 n.1 (2d Cir. 2018), the Town is entitled to proceed on its claim that Grumman knowingly made fraudulent misrepresentations and material omissions.

In addition, the Town has recently learned facts that prove Grumman's knowledge. Internal documents that Grumman withheld from the Town until after the Town filed its SAC constitute admissions by Grumman that it: dumped untreated hexavalent chromium waste at the Park (Exh. 1 attached to the Declaration of Russell B. Selman (Selman Decl.) at 2–3 ("During the 1940s,

much of the much of the waste from expanded chromate solutions was released, untreated, into the environment.")), gathered detailed information about the depth, size, and location of Grumman's disposal lagoons (Selman Decl. Exh. 2 at 1), knew in 2004 that the sludge deposited at the Park would constitute a hazardous waste under modern environmental regulations due to the presence of hexavalent chromium (Selman Decl. Exh. 3 at 8), and considered taking no remedial action at the Park, waiting for DEC to act, and knowingly putting Town residents at unnecessary risk (Selman Decl. Exh. 4 at 9). Because of Grumman's on-going attempt to conceal both its past conduct and its current knowledge of that conduct, the Town's—and the Court's—understanding of Grumman's disposal activities and the Park's true condition is evolving in real time.

Despite Grumman's professed ignorance, the Town's allegations are plausible. Grumman's employees' knowledge acquired through the course of their employment is imputed to Grumman, such as when Grumman employees buried chromium sludge in concrete tombs (SAC ¶ 59), when Grumman's environmental permits identified that the Bethpage Facility produced waste containing hexavalent chromium (SAC ¶¶ 62, 245), and when Grumman's employees and contractors misrepresented the results of its investigation in reports to DEC (SAC ¶ 252). *See New York v. United Parcel Serv., Inc.*, 253 F. Supp. 3d 583, 669 (S.D.N.Y. 2017), *aff'd*, 942 F.3d 554 (2d Cir. 2019) ("a corporation may be charged with the collective knowledge of its employees."). While Grumman claims ignorance, its internal documents prove its knowledge of its disposal activities at the Park. Grumman therefore knew its site history was deliberately and selectively inaccurate.

### C. Grumman Expected and Intended That the Town Would Rely on its Misrepresentations and Omissions

The Town alleges that Grumman, the environmentally responsible party, intended for the Town, the municipal government and landowner, to rely on Grumman's representations to DEC during DEC's formal administrative process in which the Town actively participated. (SAC ¶ 254.)

Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). As the Second Circuit interprets this standard, to satisfy the intent to induce reliance element, the Town must allege either that Grumman "had both motive and opportunity to commit fraud" or "strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner*, 459 F.3d at 290–291. The Town alleges that Grumman had and has motive and opportunity to commit fraud, recklessly concealed its knowledge, and intended for the Town to rely on its fraudulent misrepresentations.

### i. Grumman Had and Has the Motive and Opportunity to Commit Fraud to Avoid Environmental Investigation and Remediation Costs

"To raise a strong inference of fraudulent intent by motive and opportunity, a defendant must have benefitted in some concrete and personal way from the purported fraud." *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 401 (E.D.N.Y. 2018) (quotations omitted). The Town alleges Grumman had the motive and opportunity to conceal its site history to avoid environmental costs. (SAC ¶¶ 80, 95, 100, 104, 277.) Specifically, Grumman sought to avoid the expenses that it and the Town have incurred since Grumman's drums were uncovered: costs to excavate the drums, dispose of them in an appropriate landfill, conduct testing for more drums and hexavalent chromium, and ultimately remove hexavalent chromium-contaminated soil from the Park. (*See* SAC ¶¶ 8, 28, 176, 192.)

In the first instance, Grumman donated the Park land so that it would serve as Grumman's perpetual landfill. (SAC ¶ 5.) Then, after inadvertent sampling of the Park forced Grumman to acknowledge some contamination, Grumman intended for the Town to rely on its investigation so that the Town would consent to Grumman's preferred remedial course of action—which currently does not require Grumman to remediate everywhere that hexavalent chromium exceeds DEC's soil cleanup standards. (SAC ¶ 201.) Grumman concealed its dangerous knowledge that it disposed of

hexavalent chromium at the Park because that knowledge carries a multi-million-dollar price tag. Grumman correctly anticipated that if the Town knew the full scope of Grumman's activities, the Town would advocate that Grumman complete more expensive investigation and remediation, complete the cleanup itself and sue for cost recovery, or – just as the Town is doing now – sue Grumman to force Grumman to act. These are the concrete costs Grumman sought to avoid.

Further, the SAC alleges evidence to support a strong inference of Grumman's persistent intent to conceal and minimize environmental hazards at the Park to avoid and postpone expense, including after the revelation of Grumman's buried drums and continuing today. *See Lerner*, 459 F.3d at 290, For instance, Grumman:

- omitted the Park from its environmental investigation of the Bethpage Facility. (SAC ¶¶ 71, 73, 74, 246, 248.)

- did not sample the Park for decades and only identified contamination at the Park by accident. (SAC ¶¶ 80–81.)

- did not alert the Town that Grumman identified contamination at the Bethpage Facility until after Grumman's contractor mistakenly took samples from the Park. (SAC ¶¶ 72, 73, 80.)

- designed its investigation of the Park to avoid detection of hexavalent chromium. (SAC ¶¶ 90, 146, 196, 250, 273.)

- repeatedly delayed its activities to postpone expense. (SAC ¶¶ 41, 191.)

- spoke to only one former employee before preparing its site history. (SAC ¶ 252.)

- did not disclose its disposal history and thus underestimated VOC contamination, postponing remedial expense. (SAC ¶¶ 95, 96, 130, 131.)

- avoided testing the drum contents or surrounding soil for hexavalent chromium even though the yellow color indicated that hexavalent chromium was likely present. (SAC ¶¶ 174, 175, 181, 183, 185, 193, 195–97, 260, 268.)

- reburied visibly contaminated materials rather than dispose of them at a proper landfill. (SAC ¶¶ 199, 265, 266, 268, 272.)[3]

Grumman further demonstrated its intent to conceal its disposal history by improperly sealing and withholding from the Town thousands of pages of documents Grumman produced to its insurers when Grumman sought coverage for its Bethpage environmental liabilities. (SAC ¶ 256; *see Travelers Indemnity Co. v. Northrop Grumman Corp.*, 12-cv-3040 (S.D.N.Y.).) To uncover the truth, the Town moved to unseal these documents. (*Travelers Indemnity Co. v. Northrop Grumman Corp.*, 1:16-cv-08778 (S.D.N.Y.) ECF No. 495.) Only then, and after the Town filed its SAC, did Grumman produce these documents to the Town. These documents, four of which are attached as exhibits, evidence Grumman's misrepresentations, its knowledge of their falsity, and Grumman's motive to avoid expense and its willingness to put Town residents at risk.

Even after the accidental re-discovery of its concrete-encased drums, Grumman tried to convince the Town that its buried sludge was no big deal: "[a]ny chromium attributed to Northrop Grumman has been in Park soil since prior to 1962, and thus hexavalent chromium, if ever there, would not be present." (SAC ¶¶ 183, 264.) The Town has sufficiently alleged and is entitled to proceed on its claim that Grumman's attempt to conceal its toxic disposal history is part of Grumman's long-standing and ongoing scheme to conceal its contamination, minimize the danger, delay remedial action, and avoid the costs of remediating its toxic legacy. Thus, the Town has alleged Grumman's motive and opportunity to commit fraud.

---

[3] Contrary to Grumman's assertion (Memo. at 11 n. 5), Grumman did commit to sample visibly contaminated materials. When the Town's counsel stated, "it is helpful to get reassurances on the record that excavated soil is going to be sampled, and that depending on the results of that sampling hauled off as appropriate," counsel for Grumman responded, "[j]ust to be clear, it's what the work plan says." (January 16, 2025, Hearing Transcript at 131, ln. 16-22.)

### ii. Grumman Acted Recklessly by Concealing its Disposal of Highly Toxic Hexavalent Chromium

The Town also plausibly alleges that Grumman acted recklessly by trying to keep its toxic hexavalent chromium in the ground indefinitely. (SAC ¶¶ 100, 277.) For purposes of a fraud claim, reckless conduct is "highly unreasonable and [] represents an extreme departure from the standards of ordinary care. . . . It is properly alleged with specific contentions regarding a defendant's knowledge of facts or access to information contradicting fraudulent statements or omissions." *Spinnato*, 322 F. Supp. 3d at 402 (cleaned up). Here, Grumman knew it buried hexavalent chromium at the Park site (SAC ¶¶ 100, 244), knew hexavalent chromium is highly toxic, (SAC ¶ 245), knew its groundwater remedial system would not treat the hexavalent chromium at the Park (SAC ¶¶ 102, 104), and knew that its disposal pits were directly underneath the Park's ballfield and other amenities (Selman Decl. Exh. 2 at 1). Yet Grumman nevertheless concealed its disposal history, and, but for the Town's investigation after discovering Grumman's drums, Grumman would have left hexavalent chromium in the ground forever, hoping, as it stated in 2024, that its hexavalent chromium would someday degrade into a less toxic form. (SAC ¶¶ 183, 264.) Grumman knowingly risked the health of Town residents to avoid remediation costs. (SAC ¶¶ 100, 277.) The Town sufficiently alleged Grumman's intent through its recklessness.

### iii. Grumman Intended for the Town to Rely on its Representations to DEC

As the financially responsible party to conduct the investigation and environmental response to its own contamination at its own expense, Grumman intended that the Town would rely on Grumman's formal submissions to the environmental regulator, DEC. (SAC ¶¶ 254, 280.) Under New York law, "[i]ndirect communication can establish a fraud claim if the statement was made with the intent that it be communicated to the plaintiff and that the plaintiff rely on it."

*Golobe v. Mielnicki*, 2025 WL 864512, at *3 (N.Y. Mar. 20, 2025) (quotations omitted); *John Blair Commc'ns, Inc. v. Reliance Cap. Grp., L.P.*, 549 N.Y.S.2d 678, 680 (N.Y. App. Div. 1st Dept. 1990) ("[A] party who commits intentional fraud is liable to any person who is intended to rely upon the misrepresentation or omission and who does in fact so rely to his detriment."). Any publicly available statement, such as Grumman's public filings with DEC, may support a fraud claim if the defendant intended to induce reliance. *Young v. Robertshaw Controls Co.*, 481 N.Y.S.2d 891, 893 (N.Y. App. Div. 3d Dept. 1984).

Grumman intended for the Town to rely on its reports, which were prepared by licensed professionals[4] and published in an administrative process in which the Town participated as local government and landowner. Grumman admits as much in its brief by asserting that *some* of its reports included the results of *some* hexavalent chromium sampling, and therefore that it did not misrepresent the presence of hexavalent chromium. (Memo. at 16–17.) But to the extent that Grumman now admits that it intended for the Town to rely on its 2003 investigation report, it also must admit that it intended for the Town to rely on that reports' duplicitous site history. Grumman's disclosure of some sampling results was *still* misleading, because the concentration of a contaminant determines the remedial action. *See* N.Y. Comp. Codes R. & Regs. tit. 6 § 375-6.8 (setting soil cleanup standards). Grumman's sampling identifying low concentrations of hexavalent chromium deceived the Town because Grumman knew it disposed of highly concentrated hexavalent chromium waste at the Park. (SAC ¶¶ 59, 244, 245.) Had Grumman disclosed that it dumped untreated waste, it would have sampled where it knew its hexavalent

---

[4] Grumman's statements through its environmental consultants are actionable because "if the defendant authorized and caused the statement to be made it is the same as though he made it himself." *Tuosto v. Philip Morris USA Inc.*, 672 F. Supp. 2d 350, 359 (S.D.N.Y. 2009).

chromium-laden wastes were buried, instead of pretending the problem did not exist. Grumman's suggestion that it did not intend for the Town to rely on its reports is simply not credible.

### D. The Town Justifiably Relied on Grumman's Submissions to the Environmental Regulator, DEC, to Accurately Reflect the Park's Environmental Condition

To plead reliance, a party must allege that the defendant's misrepresentations or omissions induced it to act or refrain from acting to its detriment. *Sammy v. Haupel*, 97 N.Y.S.3d 269, 272 (N.Y. App. Div. 3d Dept. 2019). The reasonableness of reliance is a case-by-case determination. *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 81 (2d Cir. 2011). Courts consider the plaintiff's sophistication, the existence of a fiduciary relationship, and whether the plaintiff initiated the transaction. *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 58 F. Supp. 2d 228, 259 (S.D.N.Y. 1999). "[D]ismissals for failure to allege reasonable reliance are heavily disfavored." *Wild Bunch, SA v. Vendian Ent., LLC*, 256 F. Supp. 3d 497, 507 (S.D.N.Y. 2017); *see also Loreley*, 797 F.3d at 186 n.19. The Town alleges that it reasonably relied on Grumman's statements, but any doubts the Court has should be resolved by a jury.

The Town relied on Grumman's misrepresentations by trusting that Grumman's site history was accurate and not demanding additional testing specifically for hexavalent chromium or buried drums. (SAC ¶¶ 249, 257, 258.) The Town refrained from acting to its detriment, because had Grumman been truthful 20 years ago, the Town would have avoided the investigation costs it incurred and years of delay in returning the Park to use.

The Town's reliance was reasonable because it had no cause to suspect bad faith by Grumman, ostensibly a cooperating responsible party submitting documents to state regulators, and the only party with actual knowledge of what it disposed. (SAC ¶¶ 254, 281.) Moreover, Grumman initiated the "transaction" by donating the Park to the Town, the Town is not an expert in Grumman's historic disposal activities, and the Town and Grumman share a special relationship,

as described in Part III.A below. *See Granite Partners*, 58 F. Supp. 2d at 259 (court may consider parties' sophistication and relationship when assessing justifiable reliance); (SAC ¶¶ 279–80.)

### E. The Town Has Suffered Environmental Costs and Lost Use of the Ballfield Due to Grumman's Fraud

The Town clearly alleged its injury: the costs it has incurred due to Grumman's fraudulent concealment of its own site history and its lost use of the Park due to the delay in remediation caused by Grumman's fraud. Rule 9(b) does not apply to allegations of damages caused by fraud. *Sawabeh*, 832 F. Supp. 2d at 305. Like reasonable reliance, loss causation is a fact-intensive question best not decided on a motion to dismiss. *Damages—Loss causation and proximate cause*, 4F N.Y. Prac., Com. Litig. in N.Y. State Cts. § 128:33 (5th ed. 2025); *Loreley*, 797 F.3d at 187.

Under New York law, fraud damages compensate the victim for losses suffered due to the fraud. *Connaughton v. Chipotle Mexican Grill, Inc.*, 29 N.Y.3d 137, 142 (2017). New York adheres to the fundamental tort principle of restoring the plaintiff to the position they occupied before the commission of the tort. *See Fraud*, 16 N.Y. Prac., N.Y. L. of Torts § 21:101 (2023). This includes consequential damages. *Id.*; *Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*, 465 N.Y.S.2d 606, 619 (N.Y. App. Div. 4th Dept. 1983).

The "out-of-pocket" loss rule is not limited to literal cash: plaintiffs can recover the value of their assets injured by fraud. *Cayuga Harvester*, 465 N.Y.S.2d at 619 (plaintiff may recover for corn crop that was destroyed by defective harvester that was fraudulently sold to plaintiff); *Germain v. Nielsen Consumer LLC*, 655 F. Supp. 3d 164, 176 (S.D.N.Y. 2023) (plaintiff who was induced to leave his prior employment by fraud could assert loss of opportunity, professional reputation, and income as damages). In these cases, compensating the victim for the value of its lost asset returns the plaintiff to the position they would have occupied absent the fraud. *See Cayuga Harvester*, 465 N.Y.S.2d at 619 ("Proximate damages may not be fixed by arbitrary rule.")

The Town alleges pecuniary losses: the costs it incurred to undertake sampling, environmental consulting services, legal work, and regulatory work to return it to the position it would have occupied had Grumman truthfully described its activities. (SAC ¶¶ 8, 14, 28, 176, 192, 276.) Grumman's attempt to conceal its disposal history forced the Town to conduct, at its own expense, scientific, engineering, and consulting work to correct the hexavalent chromium data gap and enable a clean-up. These are "out-of-pocket" losses. *Connaughton*, 29 N.Y.S.3d at 142.

The Town also alleges lost asset value: the lost past and future use of the Park. (SAC ¶ 7, 85, 179, 275.) Due to Grumman's fraud, environmental work at the Park is happening out of order—recent investigations for hexavalent chromium and buried drums should have happened before selecting a remedy—and thus the Park's final remedy has been pushed years into the future. (*See* DEC, *Program Policy DER-10* § 3.1) By requiring the Town to go back to the beginning of the investigative process, Grumman has wasted years, causing the Town a measurable value of lost use through lost revenue and diminished asset value. (SAC ¶7.) *See Cayuga Harvester*, 465 N.Y.S.2d at 618. These allegations satisfy the damages element of the Town's claim.

### III.  The Town Alleges Its Negligent Misrepresentation Claim with Plausibility and Particularity

Under New York law, a negligent misrepresentation claim has three elements: "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Mandarin Trading*, 944 N.E.2d at 1109. The Town alleges all three.

### A.  The Town and Grumman Share a "Special Relationship" under the *Kimmell* Factors

A special relationship is not limited only to a fiduciary relationship. *Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 28 (S.D.N.Y. 2009). Three factors determine if a special relationship exists: "whether the person making the representation held or

appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Id.* (quoting *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996).[5] Courts have found a special relationship where defendants "initiated contact with plaintiffs, induced them to forebear from performing their own due diligence, and repeatedly vouched for the veracity of the allegedly deceptive information." *Suez Equity Investors, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001). A plaintiff can overcome a "sparsely pled" relationship of trust if it strongly alleges the other two *Kimmell* factors. *Id.* Whether a special relationship exists under New York law "is a factual issue inappropriate for summary adjudication." *Brown v. Cerberus Cap. Mgmt., L.P.*, 104 N.Y.S.3d 62, 65 (N.Y. App. Div. 1st Dept. 2019); *Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*, 680 F. Supp. 3d 322, 350 (S.D.N.Y. 2023). Thus, the Court should resolve any doubts in favor of letting the Town's claim proceed.

As to the first factor, Grumman and its environmental consultants held special expertise. A special relationship may exist "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Woori Bank v. RBS Securities, Inc.,* 910 F.Supp.2d 697, 706 (S.D.N.Y. 2012).[6] Here, only Grumman knew what it disposed at the Park, Grumman knew the Town had relied on its reports since closing the Park in 2002, and Grumman knew that the Town was acting on erroneous

---

[5] Grumman's reliance on *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F. Supp. 2d 267, 285 (S.D.N.Y. 2009) for the elements of a near-privity relationship is inapposite, because *Thomas H. Lee* drew on a line of cases concerning near-privity for purposes of professional negligence claims. *Kimmell* provides the test for whether a special relationship exists for negligent misrepresentation purposes. *Mandarin Trading*, 944 N.E.2d at 1109.

[6] While Grumman cites *Woori Bank* for the irrelevant proposition that two commercial parties do not share a special relationship when one has more information than the other (Memo. at 20), *Woori Bank* explains that a special relationship may occur here. 910 F. Supp. at 706.

information, because there was no way for the Town to know about Grumman's historic disposal activities. (SAC ¶¶ 85, 281.) Further, Grumman retained licensed environmental professionals to conduct and document its environmental investigation (SAC ¶ 254). By hiring professionals and appearing to cooperate with DEC, Grumman induced the Town into relying on the completeness of Grumman's investigation and forbearing from its own sampling or investigation until after the unearthing of Grumman's buried drums revealed information Grumman had concealed for decades. *See Suez Equity*, 250 F.3d at 103. Grumman also vouched for the veracity of its deceptive information, *see id.*, claiming "hexavalent chromium, if ever there, would not be present." (SAC ¶¶ 183, 264). Grumman's claim that it lacks special expertise because the Town retained its own environmental consultants (Memo. at 23) is meritless, because while Grumman's consultants have the benefit of Grumman's knowledge of what it buried at the Park, the Town's consultants do not.

As to the second factor, a special relationship of trust, the Town's relationship with Grumman began when Grumman donated land for the Park out of purported generosity and goodwill toward the community and continued as the Town relied on Grumman's investigation and repeated assurances by Grumman that it would act honestly and diligently.[7] (SAC ¶ 254).

As to the third factor, Grumman knew that the Town was reviewing and relying on its submissions to DEC ever since the Town closed the Park in response to Grumman's 2002 sampling results. (SAC ¶ 85.) As discussed in Section II.C, Grumman intended for the Town to rely on its

---

[7] Grumman's sole, unpublished authority for its argument that its official submissions to DEC do not contribute to a special relationship with the Town (Memo. at 20), is distinguishable, because the plaintiff there did not allege that it actually relied on a publicly filed document or that its reliance would have been justified, whereas here the Town explained its justifiable reliance in Part II.D. *34 Prince Equities LLC v. Marvel Architects PLLC*, No. 595264/2021, 2023 WL 187923 at *7 (Sup. Ct. Jan. 13, 2023).

representations. Thus, the Town has alleged the factors enumerated in *Kimmell* and *Suez Equity* and has sufficiently pleaded the existence of a special relationship.

### B. Grumman Negligently Provided False Information

As explained in Part II, the Town alleges several misrepresentations and omissions that Grumman knew were false, and the Town is not required to exhaustively catalog every instance of Grumman's fraud. *Bilotta*, 50 F. Supp. 3d at 517–18. In the alternative, the Town alleges that Grumman should have known it contaminated the Park with hexavalent chromium and thus should have known those representations and omissions were false. (SAC ¶¶ 34–35, 62, 283.) Thus, the Town alleges the second element of a negligent misrepresentation claim.

### C. The Town Reasonably Relied on Grumman's Misstatements and Omissions

Whether a party reasonably relied on a negligent misrepresentation "generally raises an issue of fact." *Kimmell*, 675 N.E.2d at 454. Reasonable reliance depends on the same three *Kimmell* factors used to determine if the parties share a special relationship. *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004) (quoting *Kimmell*, 675 N.E.2d at 454.) For the reasons stated in Sections II.D and III.A, the Town justifiably relied on Grumman's misrepresentations and omissions. Contrary to Grumman's claim (Memo. at 23), the Town was induced to refrain from acting and was harmed because if Grumman had truthfully described its site history, the Town would have been spared its investigation costs and years of delay before portions of the Park are ready for use.

### CONCLUSION

For the foregoing reasons, the Court should deny Grumman's motion to dismiss. Should the Court grant Grumman's motion, it should do so with leave to amend. *Tyman v. Pfizer, Inc.*, 16-CV-06941 (LTS) (BCM), 2017 WL 6988936, at *7 (S.D.N.Y. Dec. 27, 2017) ("Complaints dismissed under Rule 9(b) are almost always dismissed with leave to amend.") (cleaned up).

Dated: October 28, 2025

Respectfully submitted,

/s/ Russell Selman
Matthew F. Prewitt
Sonul Rao
ARENTFOX SCHIFF LLP
1301 Avenue of the Americas, 42nd Floor
New York, NY 10019
Phone:   312-258-5500
Fax:      212-484-3900
Email:   matthew.prewitt@afslaw.com
            sonul.rao@afslaw.com

Russell Selman (*pro hac vice*)
ARENTFOX SCHIFF LLP
233 S. Wacker Drive, Suite 7100
Chicago, IL 60606
Phone:  312-258-5500
Email:  russell.selman@afslaw.com

*Counsel for Plaintiff*
*Town of Oyster Bay, New York*